[No. 6333.   Decided March 18, 1907.]

JOHN CAMPBELL, *a Minor, by J. P. Campbell, his Guardian Ad Litem, Respondent*, v. WHEELIHAN-WEIDAUER COMPANY, *Appellant*.[1]

MASTER AND SERVANT — GUARDING MACHINERY — FACTORY ACT — QUESTION FOR JURY. The question whether machinery could have been advantageously guarded within the requirements of the factory act, is for the jury where there is direct conflict in the evidence on that subject (ROOT, J., dissenting).

SAME—ASSUMPTION OF RISKS—FAILURE TO NOTIFY MASTER OF LACK OF GUARD. An employee does not assume the risk from the master's failure to guard machinery, in violation of the factory act, by reason of having failed to notify the master of such failure under § 6 of the act, as that notice is for the sole purpose of securing an inspection of the factory; and the duty to notify the master of defects does not obtain where there is an entire failure to provide a guard (ROOT, J., dissenting).

DAMAGES—EXCESSIVE VERDICT. A verdict for $7,500 for the loss of four fingers of the right hand is excessive, and should be reduced to $5,000.

Appeal from a judgment of the superior court for Snohomish county, Black, J., entered February 21, 1906, upon the verdict of a jury rendered in favor of the plaintiff for $7,500, in an action for personal injuries sustained by an employee while operating a planer in a sash and door factory. Affirmed on condition of remitting $2,500.

*Cooley & Horan*, for appellant.

*McLaren & Shorett*, for respondent.

RUDKIN, J.—During the month of July, 1905, the plaintiff was in the employ of the defendant in its sash and door factory at Everett, and while so employed was engaged in operating one of the planer or sticker machines. This machine was supplied with three cutting devices, called heads,

[1]Reported in 89 Pac. 161.

and designated as the top head, the side head, and the lower head. The top head was located at the end of the machine nearest the operator, the side head near the middle of the machine, and the lower head, which caused the injury complained of in this action, at the extreme rear of the machine. At the point where the lower head was situated, there was an opening in the bed of the machine, three or four inches in width and six or eight inches in length, to permit the surface of the material in course of manufacture to come in contact with the knives in the head of the machine. While the machine was in operation, that portion of the opening not covered by the material handled was left open and unguarded.

At the time of the accident complained of, the plaintiff was handling material from one and three-fourths to two and one-half inches in width, so that the opening and the knives in the head were unguarded, except in so far as they were covered by this narrow material. While engaged in his work, the plaintiff passed down the side of the machine towards the rear, for the purpose of inspecting a hot-box, and in so doing slipped or stumbled, and his right hand in some manner came in contact with the revolving knives, causing the loss of all four fingers. This action was brought to recover damages for the injuries so inflicted. The negligence charged was failure to safeguard the lower head of the machine, as required by the factory act of 1905, Laws 1905, p. 164. Section 1 of that act provides as follows:

"That any person, firm, corporation or association operating a factory, mill or workshop where machinery is used shall provide and maintain in use,  . . .  reasonable safeguards for all vats, pans, trimmers, cut-off, gang edger, and other saws, planers, cogs, gearings, belting, shafting, coupling, set screw, live rollers, conveyors, mangles in laundries and machinery of other or similar description, which it is practicable to guard, and which can be effectively guarded with due regard to the ordinary use of such machinery and appliances, and the dangers to employees therefrom, and with which the employees of any such factory, mill or workshop

are liable to come in contact while in the performance of their duties."

The defense was contributory negligence and assumption of risk. The jury returned a verdict in favor of the plaintiff in the sum of $7,500, and from the judgment entered thereon, the present appeal is prosecuted.

The first assignment of error is the insufficiency of the evidence to justify the verdict. The particular point made is that there was no competent evidence to show negligence on the part of the appellant in failing to safeguard the machine. There was a direct conflict in the testimony on the question whether it was practicable to guard the lower head of the machine, and whether it could be effectively guarded, with due regard to the ordinary use of the machine or appliance. Under such circumstances the question of negligence in failing to properly safeguard the machinery was exclusively for the jury. As said by this court in *Rector v. Bryant Lumber etc. Mill Co.*, 41 Wash. 556, 84 Pac. 7:

"Doubtless many cases will arise in which the court can say, as a matter of law, from the location of the machinery, and the uses to which it is supplied, that it can or cannot be advantageously guarded; but between these extremes there will necessarily arise a large class of cases where the question will be solely one of fact. The statute does not attempt to specify the particular machinery that shall be guarded, but declares that all machinery of a certain class shall be provided with proper safeguards where this can be done advantageously. If there is a conflict in the testimony as to whether a particular machine can or cannot be advantageously guarded, the question must be submitted to the jury under proper instructions. Under our system of jurisprudence there is no other way to determine the fact. In this case there was ample testimony, if believed by the jury, to establish the fact that the chipper could have been guarded advantageously, and if the jury so found, this would establish negligence on the part of the respondent as a matter of law and preclude the defense of assumption of risk."

To the same effect, see, *Erickson v. McNeeley & Co.*, 41 Wash. 509, 84 Pac. 3.

The appellant further contends that the respondent cannot recover, because of his neglect to notify his employer of the failure to safeguard the machinery, as required by § 6 of the factory act. This notice is for the sole purpose of obtaining an inspection by the commissioner of labor, and is not a prerequisite to a recovery of damages under the act. Doubtless if the machinery had been properly guarded, and the guard became defective or out of place, it would have been the duty of the servant to notify the master of such defect, as is the case in regard to any other defect in the machinery about which he is employed, but this rule has no application where there is an entire failure to guard the machinery or appliances, within the knowledge of both the master and the servant. It is finally contended that the verdict is excessive. In the case of *Kirby v. Wheeler-Osgood Co.*, 42 Wash.. 610, 85 Pac. 62, the court said:

"The respondent lost the ends of the first three fingers of his right hand, and his thumb was split, and the joints left stiff, leaving him the full use of the little finger only. The verdict was for five thousand dollars, and the appellant complains that it is excessive. Damages of this character are the most difficult of all damages to measure in money, and are peculiarly within the province of the jury. For this reason, courts allow many of such verdicts to stand, notwithstanding they may feel as individuals that the sum allowed is greater than they would have consented to had the question been submitted to them primarily. In this instance, however, we feel that the verdict is larger than can be justified, even .taking the most liberal view of the evidence, and have concluded that it ought not to be permitted to stand for a greater sum than $3,500."

The injury here complained of is of like character and little more severe than in the case cited, and in view of what was there said, we are of opinion that no verdict in excess of $5,000 should be here permitted to stand.

The case will therefore be remanded to the superior court, with instructions to allow the respondent 30 days after no-

tice to him that the remittitur has reached that court, in which to remit from the judgment $2,500. If the remission be made the judgment will stand affirmed, but if not a new trial will be granted. The appellant will recover its costs on appeal.

HADLEY, C. J., FULLERTON, CROW, MOUNT, and DUNBAR, JJ., concur.

ROOT, J. (dissenting)—I dissent. To permit the factory act to control this case is to permit the punishment of a mill company and the confiscation of its property under circumstances showing no lack of good faith on its part, and no possibility of knowing how to comply with the statute. The statute provides no means by which a millowner can determine whether or not a given machine can be provided with a "reasonable, practicable, and effective guard, with due regard to the ordinary uses of such machinery." This being true, it would seem that a regard for fair dealing would cause any one to hesitate before branding a man or company as criminal when such man or company had used the best light available in determining whether such a guard could be lawfully used, even though some expert might afterwards differ from his or its opinion.

It is contended by appellant that no reasonable safeguard for this machinery could be used, and that it was impracticable to use a guard thereupon, and that the same could not be effectively guarded. Respondent endeavored to show that a reasonable safeguard could have been used, and that it was practicable to guard said machine effectively. To establish this he called three witnesses to give expert or opinion evidence on said question, each of whom testified that, in his opinion, such a guard, or some other kind of guard, was practicable; but each also testified that he had never known of the "lower head" of such a machine being guarded other than by the general construction of the machine. A model for a guard was shown, which these wit-

nesses thought practicable to use, but they testified that they had never seen such a guard in use upon any machine. The appellant called several witnesses of long experience as operators of, and dealers in, such machines, who testified that it was not customary to use any guard over the "lower head" of such a machine, and that they had never seen such a guard, and that it would be impracticable to use the model offered in evidence, or any other, upon such a machine. The machine was built without such guard and without any provision for, or intention of, having a guard.

The factory act requiring certain machinery to be guarded does not state how it shall be guarded. Applying the statute to the facts of this case, there was nothing therein that could serve as a guide to this appellant in deciding whether or not he should guard or attempt to guard the opening above these knives. In the case of *Daffron v. Majestic Laundry*, 41 Wash. 65, 82 Pac. 1089, this court had under consideration a question as to what constituted a "proper" guard. Among other things the court said:

"It was not shown that any particular kind of guard was recognized or accepted generally as being essential to meet the requirements of the statute. But it was shown by respondent's witnesses that there are several different kinds of guards in use. No particular kind is required by the statute or any recognized custom or authority. This being true, what would be the duty of the laundry owner in the premises? How could he tell what would be regarded as a 'proper' guard within the meaning of this statute? He had no standard to go by. He could only rely upon his own experience, observation, and judgment."

See, also, *Johnston v. Northern Lumber Co.*, 42 Wash. 230, 84 Pac. 627, and *Kranich v. Knapp*, 43 Wash. 85, 86 Pac. 207.

In the case at bar, it was not a question of what was a "proper" guard, but it was a question as to whether *any* reasonable guard could be used, and as to whether or not this particular portion of the machine could be guarded

practicably and effectively. It will be at once observed that this presents purely a question of opinion. When a millowner neglects to guard a certain machine, this in itself does not constitute negligence, even though some other experienced millowners or operators or expert machinists may have entertained a different opinion. If an experienced millowner and operator of ordinary intelligence, care, and prudence would, or might in good faith, deem it impracticable to effectively guard a given machine by the use of any reasonable safeguard, having "due regard for the ordinary uses of such machinery," it cannot be said that he violates the statute or his common law duty by not having a safeguard to such machine. Of course, if it be shown that such machines in other mills are commonly guarded, and that safeguards thereto are in common use, or had been by experiment shown to be reasonably practicable and effective, it could not be assumed or held that any experienced millman of ordinary intelligence, care, and prudence would consider it impracticable to maintain such means of protection. This court, in common with many others, has recognized the proposition that a millowner or employer of labor about machinery is not obliged to use the best or latest machinery. *Hoffman v. American Foundry Co.*, 18 Wash. 287, 51 Pac. 385.

When a millowner is called upon to say whether or not a certain machine can be guarded "practicably and effectively," and in making this decision relies upon his own experience and the judgment and practice of large numbers of other experienced, careful, and prudent mill operators, it cannot be said that he is guilty of negligence because his opinion, and those upon whom he relies, differ from the opinions of certain other persons. If such were the law, it would not be difficult to convict the most honest, experienced, careful, and prudent. Men of equal intelligence, equal honesty, equal interest, equal opportunities for observation, equal care and prudence in all walks of life, frequently differ radically upon matters with which they are familiar and con-

cerned.   There are doubtless many conditions and many machines and appliances in a mill where the necessity, the reasonableness, the practicability and effectiveness of a safeguard are plainly evident, and in such a case, the court may say, as a matter of law, under the factory act or the common law, that they should be guarded, and the omission to guard may be held as a matter of law to constitute negligence.   But where the machinery, appliance, or condition is such as to give rise to, and make possible, an honest difference of opinion, it cannot be said, as a matter of law or fact, that the mill operator is guilty of negligence because he has in good faith followed the opinion of one class of honest, experienced, competent millmen, instead of another, in a matter where no standard is fixed by law.   In the case at bar it cannot be said, as a matter of law, that the small opening over these knives could have been reasonably, practicably, and effectively guarded.   It appearing affirmatively from the evidence, and without dispute, that men of long and intimate experience with such matters, and of ordinary care and prudence, deemed it absolutely impracticable to use a guard over said knives, and it not appearing that such guard had ever been used or shown to be practicable in operation, I think there was a failure in the evidence to establish negligence on the part of this appellant.

It is urged that, where there is a conflict between witnesses, the question is one for the jury, and its verdict must be conclusive.   This is true where the witnesses dispute one another as to facts or alleged facts susceptible of proof or demonstration.   But this rule is not applicable to a conflict upon a question as to a contingency which is inherently incapable of being other than a matter of opinion, upon which men of equal honesty, experience, and knowledge may reasonably differ.   When three "expert" witnesses give their belief upon a scientific or technical question of mechanics as to some proposition never demonstrated, and are flatly disputed by an equal number of equally competent experts, any decision

thereupon by a nonexpert jury is simply an opinion upon an opinion—a mere surmise and conjecture. To make a verdict based upon such guesswork the foundation for a judgment awarding affirmative relief, would be to make our jurisprudence uncertain, chimerical, and unjust. Every valid judgment (other than one of dismissal) presupposes a finding of fact. If the fact does not exist or is not legally established, the judgment is unjustified. In this case, one set of experts said that, in their opinion, the "lower head" could be guarded in a practicable and effective manner. A greater number of experts testified that, in their opinion, it could not be done in a practicable manner. The jury were not expert millmen or machinists. They adopted the conclusion of the minority and thereupon tendered a verdict for respondent. No finding, no evidence, and no allegation or claim that such a machine ever was guarded, but a verdict against appellant because three experts testified that they believed it might have been done. As the machine had never been protected, it remained for the future to demonstrate whether it could be. Hence, the opinions of the experts were as to what the future might establish. Can it be thought that the mere opinion of experts as to a future contingency of this character can constitute, when substantially controverted, the basis for a judgment giving affirmative relief?

Let us apply the principle to one or two supposititious cases. Suppose we had a statute reading as follows: "If any employee receives a mortal injury by reason of an employer's negligence, such employer shall be liable in damages in the sum of $5,000 to such employee or his heirs." Suppose an employee should receive, by the negligence of his employer, an injury which he believed would result in his death, and should immediately commence an action for damages, alleging that he had received a "mortal" injury, and should produce on the trial three expert medical witnesses who would testify that, in their opinion, the injury was "mortal"—that death was sure to result therefrom within a

few weeks; while an equal or greater number of doctors should testify that, in their opinion, it was not a "mortal" injury, and that it could not be the cause of death, all of the doctors on both sides agreeing that they had never known or heard of such an injury producing death theretofore. Would any court uphold a verdict or judgment for plaintiff upon such evidence? Take another illustration: Suppose a widow should sue a physician for the death of her husband, alleging that it was due to the doctor's refusal to administer a certain medicine which, she alleges, could have been properly given and would have saved his life and restored him to health; that on the trial she produced three medical experts who testified that they never heard of that medicine being given to a patient with that ailment, but that they nevertheless believed that said medicine would have saved the life of plaintiff's husband, and that it was negligence for defendant doctor not to have administered it; that four or more other physicians, equally competent, should testify that they never knew or heard of said medicine being administered for such a sickness, and that, in their opinion, neither said medicine nor any other would have saved the man's life. What court would sustain a verdict and judgment for plaintiff upon such evidence?

Again: Suppose the factory act said that the woodwork about every machine should be painted an "appropriate" color (without defining the term), and if this were not done, any workman on such machine would have a right to recover $1,000 damages. If the owner of the mill believed that brown was an "appropriate" color, and all other mill-owners were using that color, would he be liable for damages because three partisan "experts" would swear that nothing but yellow was "appropriate"? Such a statute would be indefinite as to what constituted an "appropriate" color, just as this statute is indefinite as to what is, or as to who is to determine what is, a "reasonable," "practicable," and "effective" guard. A master must use the knowledge at hand. He

cannot avail himself of what some few persons may think at some indefinite time in the future. He is not charged with the vision and foreknowledge of the prophet, nor with discernment of the possible future opinions of expert witnesses and nonexpert juries. When an adjudication rests upon the opinions of experts as to what might have been done, and what may be done, and what will be done, and it is admitted that the thing in question *never has been done* and its possibility is denied by an even or greater number of experts, it would seem to require little argument to show that the inquiry has entered the domain of speculation and conjecture—a field where that reasonable certainty essential to the pronouncement of a legal judgment (other than a dismissal) is unattainable.

It appears from the evidence that the former state labor commissioner, Mr. Blackman, had inspected this machine while it was in the same condition as at the time of the accident, and made no objection to its unguarded condition. Respondent himself is not shown to have complained either to his employer or to the labor commissioner of the condition of the machine, nor to have ever requested or suggested a guard, although he had been in the mill six months and operating this particular machine for three months. Doubtless he, as well as the labor commissioner, appellant, and every one else, regarded it as a machine that could not be practicably guarded. Section 6 of the factory act contains the following:

"Any employee of any persons, firm, corporation or association shall notify his employer of any defect in, or failure to guard the machinery, appliances, ways, works, and plants, with which or in or about which he is working, when any such defect or failure to guard shall come to the knowledge of any such employee." Laws 1905, p. 164.

Under this provision it was the duty of respondent to have notified appellant if he believed this machine could be guarded. If he believed it required a guard, he violated

the express terms of the statute in not so notifying his employer, and cannot with good grace complain because the latter was also guilty of a violation thereof. On the other hand, if he did not deem it practicable to guard the machine, he cannot complain that the master held and acted upon the same opinion. *Wilson v. Northern Pac. R. Co.*, 31 Wash. 67, 71 Pac. 713.

The unfairness of upholding a judgment based upon such opinion evidence as we find here may be better understood by looking at the position appellant would be in if it had placed a guard upon said machine and it had proved impracticable (as the other experts testified that it would), and had in some manner contributed to some other character of an injury to a workman. In an action against the company such workman could have alleged that the company was using an impractical guard—one never used or heard of before on such a machine, and that its use was an unjustifiable experiment and constituted negligence. What defense could the company make to such a charge? This court has said that an employer is not called to enter the field of experiment. In the case of *Crooker v. Pacific Lounge etc. Co.*, 29 Wash. 30, 69 Pac. 359, this language was employed:

"While the master is not required to procure the newest and best machine, or to *enter the field of experiment* to provide additional safeguards to lessen the danger of machinery in ordinary use, he must *give heed to the deductions of experience.*"

In the case at bar, we are asked to hold not only that the master is liable if not having the latest and best, but even if he has failed to foresee, employ and experiment with a given device that neither he nor anybody else ever used or heard of until the time of the trial. Here the defendant did "give heed to the deductions of experience," and we are asked to adjudge it guilty of negligence for so doing.

There is no contention that appellant would be holden for negligence were it not for the factory act. This is a penal

statute.   As applied to a machine of this kind, the statute is too indefinite and uncertain to be effective.   If a man of intelligence and large experience with a given machine is incapable, on account of the statute's indefiniteness, of understanding what it means with reference to that machine, how can he be held to be guilty of its violation?   Appellant is not guilty of negligence unless it violated the statute.   A master could be convicted in a criminal prosecution for violating this statute only by evidence that would show his guilt beyond a reasonable doubt.   Where as to a given machine the statute does not say how it shall be guarded, or whether it shall be guarded at all, but leaves it necessarily to the judgment of the millowner as to whether or not it is "practicable" to guard it, and the millowner uses his best judgment and that of competent millmen in general, how can it be said that he is guilty of negligence?   The construction of a statute and the question of its applicability are ordinarily for the court, not the jury.   When the facts in a given case are ascertained, the court may then decide whether the statute is applicable thereto.   If one of the prerequisite facts is not established, but, as in this case, remains merely an undetermined, questioned, and questionable possibility, the statute cannot be invoked.   When a millman is equipping a mill to comply with the statute, he must decide *at that time* as to whether it is practicable to guard a given machine.   He is holden and confined to the experience, observation, and opinions then available—not to those that may be ascertained, developed, or expressed months afterwards by certain partisan witnesses in a damage case.   In other matters we do not hold men guilty because they have not correctly read the future.   None of respondent's witnesses testified that at the time of the accident they knew of such a model as was produced at the trial, or that at the time of said accident they believed that such a machine could be guarded in a practicable manner.   Hence, there is not a particle of evidence that *at the time of the accident* any person regarded it as practicable

to guard such a machine. Had the appellant attempted to apply a guard, it would have been at the hazard of damages for any accident that might have occurred from the use of an unheard of device, and at the loss caused by the inconvenience thereof.

In the case of *Johnson v. Griffiths-Sprague Stevedoring Co.,* ante p. 278, 88 Pac. 193, this court said:

"In matters of this kind an *employer is not permitted to experiment* at the risk of his employees. He must use the *ordinary, recognized appliances,* or know that those he does employ are reasonably safe for the purposes for which it was being used."

That is exactly what this appellant did—it used the "ordinary, recognized appliance." How could it "know" that a guard would be "practicable," and "reasonably safe" when it had never been used or heard of, and when millmen of long experience and broad observation did not deem it so? To have put on a guard under such circumstances would have been to make exactly the "experiment" which this and countless other courts have said the employer should not do. Surely mill companies are, by this statute, placed between Scylla and Charybdis, if a judgment such as the one at bar can be upheld. An experienced millman follows his own judgment, the opinion held and followed by every other millowner in the state, and then is mulcted in damages because that general opinion, that universal practice, that extended observation and experience, is held at naught by three "experts," who admit the facts but deny the conclusions drawn therefrom by all other persons competent to judge. The question of negligence is made to depend, not upon the care, prudence, good faith, intelligence, and experience of the millowner, or upon established facts, but upon the future, unforeseen, unforeseeable opinion of a few men who are willing to qualify as "experts" and give opinion evidence inconsistent with the universal practice of millowners, and adverse to the common opinion entertained by those most familiar with the

matter.   The purpose of the factory act is a good one, and it should be upheld in all its vigor.   But it should not be made or permitted to become a trap for the innocent.   Its humane purpose should not become an excuse for making it an instrument of oppression and wrong.   To say that an intelligent, experienced, honest man, who does all that he thinks the law requires and all that is commonly thought requisite for a *bona fide* compliance with a statute touching some mechanical matter with which he is thoroughly familiar, can be held liable because of the contrary opinion of some other person as to such a problematical matter, is to impose a hardship and inflict an injustice as shocking to one's sense of right as it is foreign to the worthy purpose of the commendable statute in question.