[No. 6569.  Decided April 9, 1907.]

LEO NOREN, *Respondent*, v. LARSON LUMBER COMPANY, *Appellant*.[1]

MASTER AND SERVANT—INJURIES—GUARDING DANGEROUS MACHIN-
ERY—FACTORY ACT—EVIDENCE—QUESTION FOR JURY.  Whether gearing
for rollers bearing off lumber from a saw were sufficiently guarded
under the factory act is properly for the jury, where, from some of
the defendant's own testimony, it appeared that while the guard,
which covered only the upper half of the gearing, was in common
use, it was not primarily a safety guard but rather one against the
accumulation of waste clogging the gears, and that it was no protec-
tion against the lower portion of the gearing, a few inches from the
floor, along which the plaintiff was compelled to work.

SAME—ASSUMPTION OF RISK—INSTRUCTIONS.  In an action by an
employee for injuries sustained through the master's failure to com-
ply with the factory act requiring the guarding of machinery, in-
structions to the effect that the employee assumed the risks, if the
same were equally as evident to the servant as to the master and
the master had made a *bona fide* attempt to comply with the factory
act, are properly refused.

SAME.  In such an action, an instruction that failure to provide
a guard that would have prevented the injury is not of itself proof
of failure to comply with the law, if the master had guarded against
accidents that could reasonably be anticipated, is as favorable to the
defendant as can be asked (ROOT and CROW, JJ., dissenting).

Appeal from a judgment of the superior court for What-
com county, Neterer, J., entered May 20, 1906, upon the
verdict of a jury rendered in favor of the plaintiff, in an
action for personal injuries sustained by an offbearer in a
sawmill.  Affirmed.

*Dorr & Hadley*, for appellant.

*Pemberton & Sather*, for respondent.

FULLERTON, J.—This is an action for personal injuries.
The appellant owns and operates a lumber mill, and the re-
spondent was one of its employees.  In the lumber mill of the

[1]Reported in 89 Pac. 563.

appellant, leading from the main saw to the back part of the mill, was a series of rollers, known as live rollers, their purpose being to assist the offbearers in carrying the timber products which passed through the main saw to other parts of the mill. The rollers were set into a table, the top of which was about twenty-three inches from the floor, and were about four feet apart. They were kept alive by being geared to a line shaft fastened to the side of the table on which the rollers were placed and running parallel therewith. The means of connection were two bevelled gear wheels about seven inches in diameter which meshed together, the one being attached to the line shaft and the other to the roller. The rollers could be started and stopped, made to run forward or backwards by means of a lever which was within the reach of, and operated by, the person who acted as offbearer. The prevailing motion of the rollers was away from the saw, and when running in that direction the gear wheels meshed from the under side. From the floor to the point where the wheels meshed was between eight and nine inches. The only covering provided for the gearing was an iron hood which covered the top and a distance of halfway down the side, leaving the bottom wholly unprotected.

At the time of his injury the respondent was acting as offbearer immediately behind the main saw. It was his duty to keep the timber products passing through the saw straight upon the rollers so that they would be conveyed to their destination in other parts of the mill. To enable him better to perform his work he was furnished with a picaroon, an instrument in the form of a single pointed pick, having the point sharpened so as to be easily stuck into the wood. The accident happened on the morning of May 20, 1905, shortly after the mill started. A large slab was cut from a log and fell upon the rollers. The appellant stuck the picaroon into it, and was following it down the rollers when the leg of his trousers caught in a pair of the gear wheels mentioned, drawing his leg between the cogs, and causing the injury for

which he sues. At the trial the jury returned a verdict in his favor, and this appeal is from the judgment entered thereon.

It is first contended that the evidence was insufficient to justify the verdict. The contention is founded on the claim that the evidence shows that the guard supplied by the appellant for this gearing was one in common use in lumber mills of like character; that it had been long in use in this particular mill and had, theretofore, proven sufficient; that the accident was an unusual one, not to be anticipated by ordinary careful and prudent millowners and operators; and that the appellant had made a careful and judicious effort to comply with the factory act, which requires gearing of the character causing the respondent's injury to be guarded. And from this it is argued that the respondent must be held to have assumed the risk of injury from the gearing, as he knew, or by the exercise of ordinary prudence should have known, of its condition. But we think the appellant had overstated the effect of its evidence. While there was evidence to the effect that guards of the character here employed were in common use, some of the appellant's own witnesses intimated, if they did not so directly testify, that this form of guard was not used originally for the purpose of protecting the employees against accident, but rather to guard against the accumulation of refuse on top of the gearing which, without some such protection, would catch in the cogs and stop the operation of the rollers on their being reversed. Others again testified openly, what must manifestly be the case, that the guard, since it covered only the upper portion of the gearing, was no protection against a contact with the lower part. Whether, therefore, the gearing was properly guarded was, from the appellant's standpoint, at best a debatable question, and being such was for the jury.

The appellant requested a number of instructions, the fourth and fifth of which were as follows:

"You are further instructed that if you find from the evidence in this case, by a fair preponderance, that the de-

fendant, Larson Lumber Co., had in good faith attempted to provide a proper safeguard and protection for the cogs and gear with which, and in connection with which, the plaintiff under his employment was required to work, that the condition of such cogs and gear was equally open and apparent to plaintiff and the defendant and that the plaintiff under these circumstances continued in his employment and was injured by coming in contact with said gear, the plaintiff under the law, assumed the risk of such injury, and cannot recover and your verdict should be for the defendant.

"You are further instructed that if you find from the evidence by a fair preponderance thereof, that the defendant had made an intelligent, careful, judicious and honest effort to provide a proper guard and if you further find the plaintiff had ample opportunity for seeing, knowing, and learning whether the guard so furnished was proper and with such opportunities continued to work, in that event he must be held to have assumed the risk of his employment including the sufficiency of such guard, and if you so find it will be your duty to return a verdict for the defendant."

The court declined to give the requested instructions, but gave the following:

"You are further instructed that the statute referred to does not provide for, as already stated to you, or define any particular kind or character of guard to be provided and maintained by an employer, but requires him to provide a proper guard, and, even though it should be shown that it was possible to have provided a guard which would have prevented the injury complained of, such fact is not in itself proof of failure to comply with the law in furnishing a proper guard, and the question for you to determine is whether or not the defendant in this case, under all of the evidence, had provided and was maintaining at the time of the alleged accident, a guard sufficient to protect the plaintiff against such dangers as reasonably intelligent and experienced millmen or operators would have anticipated."

The instruction given was as favorable to the appellant as the law of the case warranted. While the language used by this court in *Johnson v. Northern Lumber Co.*, 42 Wash. 230, 84 Pac. 627, might seemingly justify the requested instruc-

tion, it was not intended in that case to announce the rule that the degree of care required of millowners and operators in providing guards for machinery under the factory act was less than ordinary care. The millowner in this, as in the performance of his other duties towards his employees, must exercise that degree of care which reasonably prudent and cautious persons exercise under similar circumstances and conditions. The court's instruction embodied this idea and was therefore sufficient. The other requested instructions were sufficiently covered by the instructions given.

The judgment is affirmed.

HADLEY, C. J., MOUNT, and DUNBAR, JJ., concur.

ROOT, J. (dissenting)—I dissent. I not only think requested instruction numbered 5 was in accordance with *Johnston v. Northern Lumber Co.*, 42 Wash. 230, 84 Pac. 627, and other cases heretofore decided by this court, but I believe it to be clearly right as an original proposition. It was applicable to the case and should have been given—or some instruction covering the same proposition should have been. This was not done. The instruction given in lieu thereof does not cover the same question. The direction contained in the latter part of the instruction given the jury conflicts with the preceding portion of the instruction, and is entirely at variance with the plain language of the statute. Conflicting, one portion with another, it was necessarily confusing to the jury. Being confusing, and a material portion being inconsistent with the statute, it was erroneous and prejudicial. The statute requires a "reasonable" guard where it is "practical to guard" and where the machine and appliances "can be effectively guarded with due regard to the ordinary use of such machinery and appliances." The instruction given contains none of these limitations. Under that instruction, it is not sufficient for the guard to be "reasonable," "practical," and the appliance "effectively guarded with due regard to the ordinary use of the machinery and appliance." This in-

struction requires that it must be "a guard *sufficient to protect* the plaintiff against such dangers as reasonably intelligent and experienced millmen or operators would have anticipated." In other words, the millowner is made an absolute insurer against any and all such anticipated dangers, no matter how inherently dangerous the machine or appliance is, and without that "due regard to the ordinary use" which the statute plainly mentions. The nature and use of many machines are such that it is absolutely impossible to safeguard them so as to protect an operative from dangers reasonably to be anticipated. He and everybody else knows this. The statute recognizes this fact and contains limitations accordingly. The instruction complained of ignores both the fact and the statute.

CROW, J., concurs with ROOT, J.