[No. 9138. Department Two. December 21, 1910.]

ARTHUR DAHLSTROM, *a Minor, by his Guardian Ad Litem, John A. Dahlstrom, Respondent*, v. INLAND BOX AND MANUFACTURING COMPANY, *Appellant.*[1]

MASTER AND SERVANT—INJURIES—INSTRUCTIONS—CAUSE OF ACCI-DENT—EVIDENCE—SUFFICIENCY. There is no evidence warranting a verdict for personal injuries sustained by a green hand, a boy seven-teen years of age, who was injured by a rip saw while doing his first work, and as claimed by reason of inadequate instructions, where it appears from his testimony that he was instructed in the use of the saw, the operation was simple, and he did not know when or how his hand came in contact with the saw, the accident being a complete mystery to him.

Appeal from a judgment of the superior court for Spokane county, Webster, J., entered March 25, 1910, upon the ver-dict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a minor employee in a box factory. Reversed.

*Alfred M. Craven*, for appellant.

*William A. Monten* and *Danson & Williams*, for respondent.

RUDKIN, C. J.—On the afternoon of June 21, 1909, the plaintiff entered the employ of the defendant in its box fac-

[1]Reported in 112 Pac. 345.

tory in the city of Spokane. At the time of his employment, the plaintiff was a few months under the age of seventeen, was of fair size and of at least average intelligence for one of his years. For the first hour or so in the afternoon he was engaged in carrying lumber into the mill, and piling box material. Immediately thereafter the foreman set him to work at a ripsaw, such as is in common use in an establishment of that kind. The table supporting the ripsaw was about three feet by four and one-half feet in dimensions, and two and one-half or three feet high. The saw itself, which was twelve inches in diameter, was attached to an arbor underneath the table, so that the blade extended one and one-half inches above the plane of the table. A spreader stood nearly upright behind the saw, and a circular guard one and one-half inches in width extended from the spreader over the top of the saw, one and one-half inches above the teeth. A guage stood out from the saw ten or ten and one-half inches, to regulate the width of the material to be ripped or trimmed.

At the time of receiving the injuries complained of, the plaintiff was engaged in trimming box material. The pieces upon which he was working were eighteen inches in length, ten or ten and one-half inches in width, and substantially one inch in thickness. It was the duty of the plaintiff to trim the pieces down to this width, and in order to accomplish this, it was necessary to rip an inch or more off the edge of each board. After he had been engaged in this work for some time, and had trimmed perhaps one hundred pieces, his hand in some manner unknown and unexplained came in contact with the saw, causing injury to the thumb and little finger, for which a recovery was sought in this action. The defense was a denial of negligence on the part of the defendant, and a plea of assumption or risk and contributory negligence on the part of the plaintiff. The trial resulted in a judgment in favor of the plaintiff in the sum of $2,000, from which the defendant has appealed.

The only assignment of error we deem it necessary to dis-

cuss or consider is based on the insufficiency of the evidence to justify the verdict and judgment. The complaint alleged that the saw table was rough and uneven; that the saw was old, rusty and dull, and improperly set, and that the guard was old, worn, rusty, flimsy in construction, and vibrated excessively when the saw was in motion; but all these charges were wholly abandoned at the trial, and the sole ground of negligence now relied on to support the judgment is the placing of the respondent at work about dangerous machinery, without adequate instructions to protect him against the dangers incident to his employment. There was a conflict in the testimony as to the character and extent of the instruction actually given, and we must therefore accept the testimony most favorable to the respondent on that issue. He admits that the foreman shoved at least two boards or pieces through the saw in his presence, showed him how and where to place his hand, and cautioned him to keep his fingers away from the saw. The following testimony given by the respondent will show the uncertainty existing in his own mind as to the cause of the accident, or the manner in which the injury was inflicted:

"Q. You had sawed this board, this board in question, I believe you had sawed this board which is marked plaintiff's Exhibit 1, completely through, hadn't you? A. Yes, sir. Q. And you knew your work was done in respect to this board, and you had reached for another board? A. Yes, sir. Q. And then you noticed for the first time that your hand was injured? A. Yes, sir. Q. So that any difficulty you had in pushing the board through that you testified to, would have nothing whatever to do with your injury, would it? A. I don't know. Q. Well, you had sawed the board completely through? A. Yes, sir. Q. Now, how near— just show us again how you placed your hand when you were sawing that board? A. Just like that (Illustrating.) Q. Your hand was not within three or four inches, then, of the line of the saw, was it? A. No, sir. Q. If you had placed your hand over on the edge of the board, your hand would have been at least eight inches from the saw, would never have come nearer than eight inches to the saw would it?

A. No, sir. Q. That is the way you were doing, or told to do, wasn't it? A. He told me to place my hand here, did not say how far to keep it away from there; just to keep my thumb away from there. Q. He told you to be sure to keep your thumb away from the saw? A. Yes, sir. Q. And when you started to saw these boards, you were putting your hand way over as far as you could from the saw? A. Yes, sir. Q. And you did that all the while? A. Yes, sir. Q. You placed your hand as far on the edge of the board as you could, in order to do your work? A. Yes, sir. Q. And that is what you were told to do? A. Yes, sir. Q. Mr. Hicks told you to do that? . . . . A. Yes, sir. Q. Now, you are satisfied that you had sawed the strip completely off of this board when you were injured, are you? A. Yes, sir. Q. And you are satisfied that you had reached for another board over on your left? A. Yes, sir. Q. You had reached for another board? A. Yes, sir. Q. And then it was that you noticed that your right hand was injured? A. Yes, sir. Q. Have you any idea how long you were injured before you noticed it? A. No, sir. Q. Well, you hadn't sawed many boards, had you? A. I sawed about a hundred. Q. Yes, but you hadn't sawed many boards before you noticed this injury, after you were injured and before you noticed the injury? A. I hadn't sawed any boards after I was injured. Q. And you think you had your hand away four or five inches from the saw? A. Yes, sir. Q. You don't know how your hand got to the saw? A. No, sir. Q. Can't imagine? A. No, sir. Q. Can't imagine how it could have got on top of the saw by reason of the hood? A. No, sir. Q. And the whole thing is a mystery to you, isn't it? A. Yes, sir. Q. You were doing all that you could do to keep from being injured? A. Yes, sir."

Under the foregoing facts it is the merest speculation to say that the injury resulted from a failure to give adequate or proper instructions. There was nothing inherently or necessarily dangerous in the work about which the respondent was engaged. The saw was small and thoroughly and completely guarded, so far as its efficiency would permit. The danger zone was limited. The boards were ten inches in width, and it was not necessary for the respondent to bring his hand within

less than five or six inches of the saw while shoving the material through. The operation was simple, and the instructions given were explicit and ample, if followed. The respondent placed his hand as directed, and nothing unusual or out of the ordinary happened while the board was passing through the saw. He did not know how or when the injury happened, and it would be the height of folly for either court or jury to attempt to answer these questions. If we cannot say how the accident happened, how can we say that it was the result of improper or inadequate instructions. If it was all a mystery to the respondent, could it be less of a mystery to the jury? If we were to indulge in speculation, the most reasonable inference is that the respondent in some manner thrust his hand into the saw beneath the guard when reaching for a board, a danger open and apparent to him, and a danger against which he was duly cautioned. Respondent relies largely on the rule announced in *Wickstrom v. Preston Mill Co.*, 48 Wash. 164, 93 Pac. 213, and *Von Postel v. Lake Sammamish Shingle Co.*, 51 Wash. 261, 98 Pac. 665, but these cases do not warrant a recovery here. In the *Wickstrom* case the saw was out of repair and of a much more dangerous character, and the operator's hand was thrown into the saw involuntarily, because he did not know how to operate it. The facts in the *Von Postel* case were somewhat similar. Here there was no defect in the saw or in the surroundings, and there is nothing to show that the respondent's hand was thrown into the saw by reason of the manner in which he was attempting to operate it, or because he did not have adequate or proper instructions.

For these reasons we are of opinion that the testimony did not warrant the submission of the case to the jury, and the judgment is accordingly reversed, with directions to dismiss the action.

CHADWICK, CROW, DUNBAR, and MORRIS, JJ., concur.