[No. 9528. Department Two. June 22, 1911.]

H. G. YOUNG, *Appellant*, v. ALOHA LUMBER COMPANY, *Respondent*.[1]

MASTER AND SERVANT—NEGLIGENCE—GUARDING MACHINERY—CONTRIBUTORY NEGLIGENCE—EVIDENCE—QUESTION FOR JURY. In an action by an inexperienced man, whose hand was cut while doing his first work on a ripsaw, the negligence of the master and the contributory negligence of the servant is for the jury, and it is error to grant a nonsuit, where it appears that, while the plaintiff was pushing a board through the saw with a stick as directed, the foreman withdrew his attention by suddenly touching him on the shoulder and directing him to work faster, whereupon his hand was cut by the saw in an unexplained manner, there being evidence by an expert that the guard on the saw was only sufficient to pro-

[1]Reported in 116 Pac. 4.

tect against spalts or flying pieces, and that it was practicable to guard the saw with an adjustable hood which would have made the accident impossible.

SAME — GUARDING MACHINERY — ASSUMPTION OF RISKS. An employee does not assume the risks of working on a saw which was not properly guarded, as required by the factory act, from the fact that he was properly instructed.

TRIAL—MOTION FOR NONSUIT—HEARSAY—INFERENCES. Upon motion for a nonsuit, the court must consider all justifiable inferences from the evidence that are favorable to the plaintiff.

MASTER AND SERVANT—NEGLIGENCE—CAUSE OF ACCIDENT. The fact that an injured employee cannot fully explain how an involuntary accident happened does not preclude a recovery.

MASTER AND SERVANT—NEGLIGENCE—GUARDING MACHINERY—QUESTION OF LAW. Where the uncontradicted evidence shows that an accident could not have happened if a saw had been properly guarded, and that a reasonably safe guard would not have interfered with its efficient operation, the master is chargeable with negligence as a matter of law.

Appeal from a judgment of the superior court for Chehalis county, Irwin, J., entered November 12, 1910, granting a nonsuit in an action for personal injuries sustained by an employee in a sawmill. Reversed.

*Dan Pearsall* and *A. Emerson Cross*, for appellant.

*Morgan & Brewer*, for respondent.

ELLIS, J.—This is an action brought under the factory act for damages for personal injury, claimed to have been received by the appellant from an insufficiently guarded ripsaw in respondent's mill. It appears from the evidence that, on or about February 1, 1910, appellant was engaged, through an employment agency at Aberdeen, to work in the respondent's mill yard at Aloha, Washington; and on the 2d or 3d of February, 1910, when he presented himself for work, he was informed by the respondent's manager, a Mr. Dole, that there was then no work for him in the yard, but that he desired appellant to work at a certain ripsaw in the mill. The manager inquired of appellant whether he was familiar with

the operation of such a saw, and was informed by appellant that he was not. The manager then took appellant to the ripsaw, and demonstrated the operation of sawing by starting a board with his hand and then shoving it through the saw with a stick. Appellant had never worked in a sawmill before, and knew nothing of the operation of saws, but had run stationary and donkey engines for some time. He testified that he at once began work, operating as he had been directed by the manager, first starting the board with his hand, and then shoving it through with a stick about fifteen inches long; that he had worked about an hour and a half, when the mill foreman came up and, putting his hand on the appellant's left shoulder, hallooed at him "that this piece work has to be done fast." Appellant's testimony as to how he was injured is as follows:

"Q. What did you do? A. I turned around and looked in—turned around and looked at his face. Q. What position were your hands? A. They were right in front of the saw, possibly a foot. Q. What did you have in your hands, if anything? A. I had a stick. Q. What were you doing with this stick at the time, Mr. Young? A. I was starting to shove the board through the saw. Q. Had this board gone all the way through the saw at the time, at the time that you turned around to see the foreman? A. No, sir. Q. Do you recall which shoulder he hit you on? A. I think it was my left shoulder. Q. Which way did you turn, to the left or to the right? A. To the left. Q. Which hand—which was forward on this stick, your left or right hand? A. My left hand. Q. Did you have anything on your hand? A. On the stick?

After being questioned concerning a glove which was on his hand at the time, his examination continued:

"Q. What did you do—how did you know that your hand was in the saw? A. Because I felt like there was an electric shock running through my arm. Q. What did you do when you felt this shock that you speak of? A. I looked at my hand. Q. And in what condition did you find it in? A. It was very bloody at that time. Q. As to its condition, as to

whether or not it was all there or not? A. It was not all there. Q. What part was gone, if any? A. That finger. Q. Where was the portion of that finger or did you know where that portion of that finger was? A. It laid on the front of the table. Q. Were any other fingers or any other portion of your hand cut at the same time? A. Yes, sir. Q. Tell the court and jury what portion of your hand and fingers were cut. A. This middle finger was cut in two and this part here was cut half through and the joint and thumb split up."

Appellant further testified that he did not attempt to brush spalts or splinters away from the saw with his hand, and that he did not get injured in that manner.

The saw was guarded by a board along the right side and another about three inches wide over the top of the saw, at right angles to the first board and about three inches above the saw. The saw projected, appellant says, more than two and a quarter inches through the table on which the boards were placed for sawing. The front of the saw and the left side above the table were exposed to the operator. A picture, introduced in evidence by respondent on cross-examination of the appellant, shows a piece of leather, or covering of some kind, over a part of the front of the saw, but appellant said he did not remember seeing it there at the time of the accident.

One J. S. Coxey, called as an expert for appellant, testified that in years past he had worked in sawmills for about five years in all; that he had had about three years' experience with table saws like a ripsaw or resaw; that he had made guards for several ripsaws and had seen several made by other people; that he was acquainted with the operation of ripsaws and resaws; that he had been in recent years engaged in various lines of business and employment, and at times in inventing sundry devices, among them models for guards for wood working machines. The trial court holding him sufficiently qualified as an expert, he testified that the guard above described would be reasonably safe to guard

against spalts or anything thrown against the operator's body or face by the saw, but not as a protection for the hands. Being asked what in his opinion would be a reasonably safe guard for a ripsaw, having due regard to the uses for which it is intended and the efficiency of its operation, he testified, in effect, that a reasonably safe guard for such a saw would be an adjustable hood, suspended on a screw or bolt over the saw, in such a way that it could be raised or lowered according to the thickness of the boards to be sawed, thus protecting the operator from injury at every point except the space through which the boards would pass; that such a guard would not interfere with the operation of the saw in the least, and that, if such a guard had been used, it would have been impossible for the appellant to be injured. He further testified that he had had such a guard of his own some twelve years ago, and had seen one in use on a ripsaw or resaw the day before the trial, in the Aberdeen Manufacturing Company's plant at Aberdeen.

Such is the substance of appellant's evidence. At its close, respondent moved for a nonsuit, challenging its sufficiency on various grounds. The court, in sustaining the motion, said:

"Now, gentlemen, I think I will have to sustain the motion. There is no evidence showing just how this man did get his hand hurt. The only way that I can gather from the evidence that he did get it hurt was that he says that he had his hand on the board that was going through the saw, the left hand, and the foreman touched him on the shoulder to attract his attention and that when he was looking at the foreman, in speaking to the foreman, he felt his hand hurt. Now, it seems evident to me, gentlemen, that he simply held his hand on the board, as it passed through into the saw, too long; it slipped into the saw, his finger, before he was aware of it. Any guard that might have been on there that would permit a board to run through there would have allowed the same thing. Anything, any guard, would have allowed his hand to go in there the same way, and, for that reason, that it could not have been owing to the guard, because any guard that could have been placed there that would have allowed the saw to

operate would have allowed his hand to go under the guard. It was simply one of those accidents that would have occurred from his inattention. If he had stopped and took his hand off while he allowed the foreman to speak to him he would have not been hurt. As I see it, any guard that could have been placed there could not have prevented his hand from slipping into the saw when he had hold of the board, which was evidently the way he was hurt. The evidence shows that he was properly instructed as far as that is concerned, and shows that he was not experienced in the use of saws, but also shows that he was an experienced man and had been around machines and had run donkey engines for some time, so that his education in that way would have been sufficient for him to understand the ordinary risks of handling and working with a saw."

The formal judgment of dismissal recites that the motion was sustained "for the reason that there was no evidence showing just how the plaintiff got his hand hurt, and that it was not owing to the absence of a reasonable safe guard that plaintiff was injured." It is evident from the court's remarks that he based his decision largely upon the assumption that appellant was guilty of contributory negligence by placing his hand upon the board and allowing it to follow the board into the saw. This assumption is not only not supported by any evidence, but is contrary to the evidence. Appellant, who was the only person who testified as to the accident, said that he had his hand upon the stick pushing the board, and there was no evidence that he had his hand upon the board at the time of the injury. The court may not have believed the witness, but as there was nothing inherently incredible in his statement, its credibility was for the jury.

The court seems, also, to have held that appellant assumed all the risks of working at the saw, because he had been properly instructed and knew something of machinery. This was not ground for a nonsuit, if, in fact, the guard in use was not a reasonably safe one and a reasonably safe guard was practicable, and if, in fact, the appellant would not have been injured had a reasonably safe guard been used. These were

questions for the jury. *Hall v. West & Slade Mill Co.*, 39 Wash. 447, 81 Pac. 915; *Noren v. Larson Lumber Co.*, 46 Wash. 241, 89 Pac. 563; *Thomson v. Issaquah Shingle Co.*, 43 Wash. 253, 86 Pac. 588; *Campbell v. Wheelihan-Weidauer Co.*, 45 Wash. 675, 89 Pac. 161; *Rector v. Bryant Lumber & Shingle Mill Co.*, 41 Wash. 556, 84 Pac. 7; *Vosberg v. Michigan Lumber Co.*, 45 Wash. 670, 89 Pac. 168; *Johnson v. Far West Lumber Co.*, 47 Wash. 492, 92 Pac. 274; *Erickson v. McNeeley & Co.*, 41 Wash. 509, 84 Pac. 3. Whether assumption of risk could have been invoked successfully as a defense was dependent upon evidence as to whether the respondent had made a *bona fide* effort to protect the operator with a guard commonly in use for the purpose, and whether such an accident could reasonably have been anticipated by the respondent, and upon the knowledge and experience of the appellant. These are all matters of defense. *Johnston v. Northern Lumber Co.*, 42 Wash. 230, 84 Pac. 627.

Nor do we think the granting of the nonsuit warranted on the ground that the evidence failed to show "just how plaintiff got his hand hurt." Upon challenge to the sufficiency of uncontradicted evidence, by motion for nonsuit, it is the duty of the court to consider, not alone the literal statements, but all of the justifiable inferences therefrom favorable to the plaintiff. *Ladouceur v. Northern Pac. R. Co.*, 4 Wash. 38, 29 Pac. 942; *Johnson v. Southern R. Co.*, 122 N. C. 955, 29 S. E. 784; *Shay v. Richmond & Lancaster Turnpike Road Co.*, 64 Ky. 108; *Hanley v. California Bridge & Constr. Co.*, 127 Cal. 232, 59 Pac. 577, 47 L. R. A. 597; *Volosko v. Interurban St. R. Co.*, 113 App. Div. 747, 99 N. Y. Supp. 484; *McCabe v. Montana Cent. R. Co.*, 30 Mont. 323, 76 Pac. 701; *Lee v. Publishers, George Knapp Co.*, 137 Mo. 385, 38 S. W. 1107.

There are only three ways suggested in the briefs or in argument in which it was possible for the accident to have happened; either by appellant placing his hand upon the board and allowing it in that way to pass into the saw, or by

his attempting with his hand to remove spalts or splinters from near the saw, or by his hand coming in contact with the unguarded front of the saw when, being touched and loudly accosted by the foreman, he turned suddenly to the left. The first two of these are negatived by the evidence. The almost necessary inference, therefore, is that the accident happened in the third way. In fact, that is the fair import of his evidence, even without eliminating other possible ways, though appellant did not actually see, and hence did not say, just how his hand got hurt. There was no such element of mystery in this case as is found in *Dahlstrom v. Inland Box & Mfg. Co.*, 61 Wash. 325, 112 Pac. 345. In that case the claim that the saw was insufficiently guarded was abandoned on the appeal. In *Hansen v. Seattle Lumber Co.*, 31 Wash. 604, 72 Pac. 457, the plaintiff was alone at the time of the accident. He testified that he did not know how it happened, and made no effort to explain any of the circumstances. That case is not controlling on the facts here presented. It was decided before the factory act was passed. There was no evidence from which it could be inferred that any negligence of the defendant caused the injury. When, from all the circumstances developed by the evidence, it becomes reasonably apparent that the injury occurred because of an insufficient guard, then, in the absence of contradictory evidence, a nonsuit should not be granted for lack of direct evidence showing just how it occurred. There is no valid reason why the same rule should not apply in such a case as in cases where the master has failed to instruct the operator and warn him of the danger.

"Where the contact is involuntary or accidental, the (in)-ability of the party to fully explain how the accident happened should not be deemed conclusive against him." *Von Postel v. Lake Sammamish Shingle Co.*, 51 Wash. 261, 98 Pac. 665.

See, also, *Wikstrom v. Preston Mill Co.*, 48 Wash. 164, 93 Pac. 213.

We think the court also erred in holding that there was no evidence that it was owing to the absence of a reasonably safe guard that the appellant was injured. All other suggested causes were eliminated. There was evidence tending to show that the accident could not have happened had a reasonably efficient guard been used. There was also evidence that such a guard as that used was not reasonably safe, and that a reasonably safe guard could have been used without in the least interfering with the efficient operation of the saw. In such a case, in the absence of any evidence to the contrary, a defendant is chargeable with negligence as a matter of law. *Hansen v. Seattle Lumber Co.*, 41 Wash. 349, 83 Pac. 102; *Erickson v. McNeeley & Co.*, 41 Wash. 509, 84 Pac. 3; *Vosberg v. Michigan Lumber Co.*, 45 Wash. 670, 89 Pac. 168; *Adams v. Peterman Mfg. Co.*, 47 Wash. 484, 92 Pac. 339; *Newcomb v. Puget Sound etc. Boiler Works*, 54 Wash. 419, 103 Pac. 456; *Whelan v. Washington Lumber Co.*, 41 Wash. 153, 83 Pac. 98, 111 Am. St. 1006; *Rector v. Bryant Lumber etc. Co.*, 41 Wash. 556, 84 Pac. 7; *Benner v. Wallace Lumber & Mfg. Co.*, 55 Wash. 679, 105 Pac. 145.

The judgment is reversed, and the cause remanded for a new trial.

DUNBAR, C. J., CROW, MORRIS, and CHADWICK, JJ., concur.