[No. 5805. Decided December 20, 1905.]

KATIE DAFFRON, *Respondent*, v. MAJESTIC LAUNDRY
COMPANY, *Appellant*.[1]

MASTER AND SERVANT—NEGLIGENCE—DANGEROUS MACHINERY—
LAUNDRY MANGLE — GUARD — SUFFICIENCY — UNEXPECTED DANGERS.
There is not sufficient evidence of failure to provide a proper guard
for a mangle, or to support a verdict for injuries received by the
operator, where it appears from the testimony of the plaintiff that
the machine had a guard, and the defendant had made a *bona fide*
attempt to comply with the factory act, that the plaintiff's hand
became entangled in apron strings and was forcibly drawn over the
top of the guard, and that such an accident was a most unusual oc-
currence, and was not anticipated by the plaintiff, an experienced
operator, and could not have been reasonably anticipated by the
defendant.

[1]Reported in 82 Pac. 1089.

5—41 WASH.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered April 17, 1905, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a mangle operator in a laundry. Reversed.

*John P. Hartman,* for appellant.

*P. D. Hughes* and *Fenley. Bryan,* for respondent.

Root, J.—In the superior court respondent had a verdict and judgment against appellant in the sum of $2,800, from which judgment this appeal is taken. The admitted facts, and those established by the evidence on behalf of respondent and by that portion of appellant's evidence which was undisputed, showed the following facts: Respondent was injured by having her left hand caught and burned between the feed roll and cylinder of a "mangle" upon which she was working as "head feeder" in appellant's laundry; that said mangle consists of a long, hollow cylinder, about two feet in diameter and heated from within, and several small rolls and other apparatus; that its purpose is to smooth or "iron" clothes after being washed; that the clothes are inserted between the cylinder and a feed roll on the side where the operator (known as the "head feeder") stands—said cylinder revolving toward said operator at a speed of seven or eight revolutions per minute; that the clothes pass around on the cylinder one or more times, and are removed by an operator, known as a "folder," who stands on the opposite side of the mangle from the head feeder; that the mangle upon which respondent was injured is a machine of standard make and in common use; that in front of the head feeder and extending parallel with the cylinder and feed roll is a guard which is so placed for the purpose of preventing the hands of the operator from being carried between the rolls, as she pushes the clothes into the mangle; that this guard was round, and about an inch or two in diameter, and so placed as to revolve

when the hand passed along over it; that respondent had worked for four years in laundries, and in some where they had the same kind of mangle as that upon which she was injured; that she was an experienced "mangler," and had been operating this particular mangle for two weeks immediately preceding the injury; that, as head feeder, she was in charge of the machine and had supervision over three other operatives who worked in connection therewith; that the defects in the apparatus alleged in the complaint were all open, apparent, and discernible to any one experienced in the operation of a mangle; that respondent knew all about its construction and condition, and knew of the ordinary dangers to be apprehended in working thereupon; that she had never made any complaint to appellant about the mangle, or anything, except in one instance she spoke to appellant's superintendent of something which is not shown to have any connection with the cause of the injury in question, and except that one of her witnesses says that respondent, when she first came to the laundry, told the superintendent that the mangle did not look good to her; that the mangle had been in use five or more years; that respondent's hand was caught between the feed roll and cylinder and held until extricated by the superintendent and other employees; that she was, at the time, putting through the mangle some bartender aprons with long strings; that her hand did not go between the guard and the feed roll where the clothes are put in, but went over the top of the guard and between the feed roll and cylinder, where it was caught and badly burned.

Respondent claims that the strings upon the aprons, after going around the cylinder, were in some manner thrown over, so as to fall upon and entangle her hand, and forcibly pull it across the top of the guard, and then down back thereof and into the place where injured; that she did not know that there was danger of this kind of an injury. Respondent bases her right to recover upon the contention that the guard was not a "proper" guard, within the meaning of the factory

act of 1903. From these facts it will be readily seen that, unless there be some statute or decision to the contrary, this is a clear case of assumed risk wherein respondent could not recover. *Bier v. Hosford,* 35 Wash. 544, 77 Pac. 867; *French v. First Ave. R. Co.,* 24 Wash. 83, 63 Pac. 1108.

But it is urged by respondent that the factory act of 1903, as interpreted by the decision of this court in the case of *Hall v. West & Slade Mill Co.,* 39 Wash. 447, 81 Pac. 915, prevents appellant from availing itself of the defense of assumed risk. The writer dissented from that decision, but must now accept it as binding in this case. The holding there was that an employer, guilty of violating the factory act, could not plead or avail himself of the defense of assumed risk in an action by an employee for injuries caused by reason of such violation. In that case the plaintiff was injured by being caught upon a set screw on a revolving shaft which the mill company had not covered or attempted to guard or protect. The court held that, as the defendant company was guilty of violating a penal statute, it was deprived of the defense of assumed risk, even though the statute did not expressly so state. In the case at bar the defendant company had made a *bona fide* effort to comply with this statute.

Respondent contends that it was not a "proper" guard, for the reason that it did not prevent the injury while some other kind of a guard would have done so. It was not shown that any particular kind of guard was recognized or accepted generally as being essential to meet the requirements of the statute. But it was shown by respondent's witnesses that there are several different kinds of guards in use. No particular kind is required by the statute or any recognized custom or authority. This being true, what would be the duty of a laundry owner in the premises? How could he tell what would be regarded as a "proper" guard, within the meaning of this statute? He had no standard to go by. He could only rely upon his own experience, observation, and judgment. Before appellant can be deprived of the defense of

assumed risk, it must affirmatively appear that it violated this factory act in not having a proper guard. It is only required to provide guards sufficient to protect against such dangers as reasonably intelligent and experienced laundrymen would anticipate.

Respondent says the accident occurred by reason of the loose strings of some aprons being thrown over her hand, and entangling it or her fingers, so as to pull her hand in where it was hurt. This version is flatly contradicted by the evidence of several who helped take her hand out, and who testify that the apron strings were not about her hand or fingers. But, accepting her story as correct, it would be a most remarkable occurrence. No witness testified to having ever heard of such an accident occurring in such a manner before. As a matter of physics, it is well nigh incredible that her hand could have been caught by the apron strings and drawn in as related by her. She testifies that she never anticipated such a danger. If she, an expert at the work, would not expect or foresee such an accident, why should the owner? As an experienced operator of such a machine, she could foresee dangers thereabout as well as the owner or any one else. If it was not negligence for her not to anticipate such an accident, how can it be said to have been negligence for the owner not to have foreseen it? This guard was for the purpose of keeping the operator's hands from going between the feed roll and cylinder as she pushed the clothes therein. It answered this purpose perfectly. Respondent did not get her hand caught in this way, but in an unusual and unexpected manner. The guard was not put on to protect against flying apron strings that might lasso a feeder's hand and pull it up over and back of the guard and then down between the roll and cylinder. Evidently no mangle-maker or owner ever foresaw such an accident, or imagined a necessity for a guard against such an occurrence. The law is well settled that, where an employer places a guard sufficient to protect against all dangers reasonably to be anticipated, he

is not guilty of negligence because the guard fails to protect against an unforeseen danger against which it was not intended as a protection. *Decker v. Stimson Mill Co.*, 31 Wash. 522, 72 Pac. 98.

The judgment of the honorable superior court is reversed, with instructions to dismiss the action.

MOUNT, C. J., DUNBAR, FULLERTON, RUDKIN, HADLEY, and CROW, JJ., concur.