[No. 5768.  Decided December 26, 1905.]

LAWRENCE WHELAN, *Respondent,* v. WASHINGTON LUMBER COMPANY, *Appellant.*[1]

MASTER AND SERVANT—NEGLIGENCE—FACTORY ACT—ASSUMPTION OF RISK.  Under Laws 1903, p. 40, requiring factory and mill owners to use proper belt shifters, failing to do so is negligence *per se,* and where this is not done, an employee assisting in removing a belt does not assume the risk of injury therefrom.

SAME—BELT SHIFTERS—WHEN NECESSARY.  The factory act requiring the use of "proper belt shifters or other mechanical contrivances for the purpose of throwing on or off belts on pulleys," was not intended to require shifters only in proper or necessary places, but requires "sufficient" belt shifters in all cases; and it could rarely if ever be left to the jury to say whether any belt shifter or other device was necessary in a given case.

SAME—SUBMISSION OF QUESTION TO JURY.  Where there is conflicting evidence upon an issue as to whether shifting devices for the throwing on or off of belts could have been effectively maintained, and the jury find the issue in favor of the plaintiff, under instructions submitting such issue, the defendant cannot claim that the plaintiff assumed the risk from the fact that the shifters were unnecessary and the factory act not violated.

DAMAGES—WHEN NOT EXCESSIVE.  A verdict for $6,000 for personal injuries to the ankle joint, resulting in the extraction of pieces of bone, a large hole which was a discharging sore up to the time of the trial, and a stiff joint or permanent anchylosis, is not excessive.

Appeal from a judgment of the superior court for Pierce county, Huston, J., entered January 5, 1905, upon the verdict of a jury, rendered in favor of the plaintiff, after a trial on the merits, in an action for personal injuries sustained by an employee in a sawmill in removing a belt from a revolving shaft.    Affirmed.

*James M. Ashton* and *W. H. Hayden,* for appellant.

*Govnor Teats,* for respondent.

[1]Reported in 83 Pac. 98.

HADLEY, J.—This is an action to recover damages for personal injuries. Plaintiff was, at the time he received his injuries, in the employ of the defendant, and his duties were those of attending to a cut-off saw. The saw was operated by means of a belt extending upward from a pulley attached to the saw, the belt being also connected with a pulley above. The latter pulley was run by means of another to which was attached a power belt connecting with the main shaft, which was propelled by steam power in the mill. The belt at the saw had become unlaced, and was liable to be caught so as to cause injury to the plaintiff. No belt shifters were provided, and this belt could not be repaired without stopping the entire mill or removing the power belt above. Plaintiff notified the head sawyer of the situation, and the latter caused the mill to be stopped.

About this time the foreman appeared, and the plaintiff testified that the foreman then ordered him to go up and remove the power belt. The foreman says he told him to remove the saw belt. The plaintiff is corroborated by another witness who says he heard the order, and that he and the foreman stood together and watched plaintiff while the latter was attempting to remove the power belt. Plaintiff ascended a ladder and stood upon a plank above for the purpose of reaching the power belt. He descended to get a stick to assist in the removal, and then returned to the position above. Meantime the mill was started by direction of the foreman, and plaintiff says it was running at about half its ordinary speed. He says he understood that it was thus started and run at the reduced rate of speed for the purpose of assisting him in the removal of the belt, as some motion was necessary in order to effect the removal. While attempting to remove it by the aid of the stick, he was caught and injured. He alleges in his complaint that the defendant was negligent in not providing a proper belt shifter or other mechanical contrivance for the removal of the belt. The answer alleges that the plaintiff assumed the risk of the danger, and

that his injuries were due to his contributory negligence. A trial was had before a jury, and a verdict was returned for plaintiff. From a judgment entered upon that verdict, the defendant is prosecuting this appeal.

A large part of appellant's brief is devoted to a discussion of its contention that the court erred in not holding, as a matter of law, that respondent assumed the risk of the danger. Section 1, of chapter 37, of the Laws of 1903, p. 40, provides as follows:

"That any person, corporation or association, operating a factory, mill or workshop where machinery is used, shall provide and maintain in use proper belt shifters or other mechanical contrivances for the purpose of throwing on or off belts on pulleys."

Respondent alleges negligence of appellant in not complying with the requirements of the statute. Appellant argues that, inasmuch as respondent had full knowledge of the situation, he waived the requirements of the statute and assumed the risk of the danger. Since appellant's brief was written, the case of *Hall v. West & Slade Mill Co.*, 39 Wash. 447, 81 Pac. 915, was decided. In that case it was held that the provisions of the statute above cited cannot be waived by an employee. A similar holding with reference to another statute of like effect was made in *Green v. Western American Co.*, 30 Wash. 87, 70 Pac. 310. It is unnecessary at this time to review the arguments of those cases, for the reason that we regard the question now raised by appellant as settled against its contention. Under the above decisions, it was negligence *per se* for defendant to fail to maintain proper belt shifters, and respondent could not waive the statute and assume the risk of the danger consequent upon such neglect.

It is further contended that, notwithstanding the statute, if a belt shifter was not necessary or practicable, then respondent assumed the risk, and that it should have been left to the jury to say whether it was necessary or practicable to provide such a device at the place in question. The legisla-

ture has left little room in the premises for the exercise of discretion of mill operators, or of judgment on the part of juries. The statute was manifestly intended for the protection of life and to prevent the mangling of human bodies. To that end the legislature sought to make the protection as complete as such devices can make it. It did not say that belt shifters shall be maintained where necessary, and leave mill operators and juries to say when the necessity exists. The term "proper belt shifters," as used in the statutory connection, does not merely mean belt shifters in proper or necessary places, but rather *sufficient* "belt shifters or other mechanical contrivances" to effect the "throwing on or off belts on pulleys." There is no classification of pulleys or places as to the matter of necessity or practicability; and it was the manifest theory of the law-makers that, when belts have been placed upon any pulleys for the purpose of operating machinery, the necessity for removing and replacing them will at some time arise; and that, in order to guard against danger from an attempt to shift them while in operation, some effective contrivance must be maintained for that purpose.

It certainly must be conceded that the contrivances must be maintained at all places where belts are shifted while in operation, in order to exempt the mill owner from the charge of negligence. The shifting of some belts while the machinery moves may seldom occur, but it is upon those rare occasions that the protection is needed. We are not now prepared to say that occasion may *never* arise when a question of this character may be proper for a jury, although it seems to us that, under this statute, such occasions must be very rare. To open the way for controversies as to whether the protection designated by the statute is or is not necessary or practicable in given places would lead to much litigation which might result in the nullification of the very purpose of the statute. Such statutes are mandatory, and it is not for the mill owners or juries to say whether the requirements are wise or necessary. Passing upon a similar principle, the

supreme court of Montana, in *State v. Anaconda Copper-Min. Co.*, 23 Mont. 498, 59 Pac. 854, said:

"The contention that the court erred in excluding evidence offered to show that the devices or cages required by the amended law would be dangerous, and apt to result in accidents, must fall also. The text of the law discloses a measure designed to guard against the dangers incident to lowering and elevating men in deep mining shafts. Whether the cased-in cage and its appliances is the best or wisest method was a question for the legislature to decide."

But what may have been appellant's absolute right in this regard in the case before us we need not determine, since we think the question was actually submitted to and passed upon by the jury to such an extent that, even under appellant's contention, its rights in the premises were not prejudiced. There was before the jury evidence of millwrights that belt shifting devices could have been effectively maintained and operated at the place in question, and there was also the evidence of others that they could not. The issue was therefore squarely made in the evidence, although it was not raised by appellant's answer to the complaint, and was not within the pleadings. The court instructed the jury as follows:

"While the law commands the performance of the duty I have named, it does not require or compel the performance of an impossible or impracticable and useless thing. If you find from a fair preponderance of the evidence that proper belt shifters or other mechanical contrivances could have been provided and maintained without a substantial interference with the use and operation of the machinery, and that no such proper belt shifters were provided and maintained, and that the failure to so provide and maintain them was the proximate cause of the injury complained of, then you should find for the plaintiff, unless you further find from a fair preponderance of the evidence that plaintiff in any wise contributed to his own injury by carelessness, negligence or recklessness."

Under the evidence admitted, and under the above instruction, the appellant undoubtedly had the benefit of a finding by the jury upon the subject. The jury must have found, under

the evidence and under that instruction, that proper belt shifters could have been practicably provided and maintained.

We think the question of contributory negligence was, under the circumstances, properly submitted to the jury, and that it was submitted under proper instructions.

It is insisted that the verdict was excessive. It was in the sum of $6,000. Respondent's injury was in the bones of the ankle joint. He was long in the hospital under treatment. Pieces of bone were extracted at the joint, and a discharging sore continued up to the time of the trial. At the ankle joint where the bone was removed, a hole or depression exists, about one and one-half by two inches in dimension. He cannot move the foot. The joint is stiff, and the evidence shows that permanent anchylosis has resulted. Appellant cites *Bailey v. Cascade Timber Co.*, 35 Wash. 295, 77 Pac. 377, as authority for reducing this verdict. The verdict in that case was also for $6,000, and was, by direction of this court, reduced to $4,000. The injury there consisted of a fracture of the ulna of the forearm, and a dislocation of the head of the radius. The turning motion of the forearm was to some extent limited, and at the elbow the arm could not be bent to the full extent. The evidence showed that Bailey was still able to cut wood, and that his earning capacity was not greatly lessened. Moreover, the trial court in that case, in its order denying a motion for new trial, expressly stated that the amount of the verdict should not have been in excess of $4,000, but declined to require a remittance from the amount, in the belief that it lacked the power to do so. This court held that it had such power, and directed that it should require Bailey to remit $2,000 or submit to a new trial. The record discloses no such finding of the trial court in this case. The denial of the motion for new trial, which expressly raised the point, shows that, in the opinion of that court who saw and observed respondent's injury, the verdict was not excessive. We do not think the evidence is such that we would

be justified in interfering with the trial court's ruling in that regard.

The judgment is affirmed.

MOUNT, C. J., and DUNBAR, JJ., concur.

FULLERTON, J, concurs in the result.

RUDKIN, ROOT, and CROW, JJ., concur, in view of the decision in *Hall v. West & Slade Mill Company.*