[No. 5752. Decided March 9, 1906.]

MABEL JOHNSTON *et al., Respondents,* v. NORTHERN LUMBER COMPANY, *Appellant.*[1]

MASTER AND SERVANT—ASSUMPTION OF RISKS—PROVIDING GUARDS UNDER FACTORY ACT. The factory act of 1903, requiring employers to provide proper guards for cogs, saws and dangerous machinery, does not deprive the master of the defense of assumed risk, where he has made a *bona fide* effort and used due care to provide a guard for an edger, which an experienced employee had used for three years without objection, and where the employee was injured by a most unusual accident that could not have been reasonably anticipated; and in such case the employee assumes the risk of the injury from such fact, and cannot claim that the guard was not a proper guard.

Appeal from a judgment of the superior court for Snohomish county, Joiner, J., entered December 20, 1904, upon the verdict of a jury rendered in favor of the plaintiffs, in an action to recover damages for the death of an employee in a mill, struck by a splinter thrown from an edger. Reversed.

*Graves, Palmer, Brown & Murphy* and *Cooley & Horan* (*C. H. Winders,* of counsel), for appellant.

*Robt. A. Hulbert* and *Earl W. Husted,* for respondents.

CROW, J.—This action was instituted by Mabel Johnston, widow, and Allen F. Johnston and Dorothy D. Johnston, children and minor heirs at law, of Fred J. Johnston, deceased, to recover damages for the alleged wrongful death of their husband and father. The respondents alleged that, prior to

1Reported in 84 Pac. 627.

and on March 9, 1904, Fred J. Johnston was in the employ
of appellant, the Northern Lumber Company, as an edger-
man, at its sawmill near Everett, in Snohomish county; that
it was his duty to feed or push timbers between certain rollers
into an edger, in the center of which were located a number
of circular saws designed to cut said timber into boards
of proper width and sizes.

Respondents claim: (1) that the edger was not properly
constructed, and (2) that it was not provided with proper
and necessary guards. The complaint alleges that, while said
Fred J. Johnston was feeding said edger, by reason of its
imperfections and defective condition, and by reason of the
negligence and failure of appellant to provide proper safe-
guards, a large splinter, thrown from the saws over the front
rollers, struck him over the heart, inflicting injuries causing
his death. It being shown at the trial that the machine was
of a standard make and in good repair, respondents' entire
claim to negligence on the part of appellant hinged upon the
question whether the edger was provided with the proper
and necessary safeguards required by the factory act of 1903.

Appellant, answering the complaint, denied that Fred J.
Johnston's death was the result of any negligence upon its
part, denied that the edger was defective, or that it was not
properly guarded, and affirmatively pleaded contributory
negligence and assumption of risk. At the close of respond-
ents' case, appellant made a motion for a nonsuit, which
motion was denied. At the close of all the evidence, ap-
pellant made a motion for a directed verdict in its favor,
which motion was also denied. The jury having returned a
verdict in favor of respondents, and appellant's separate
motions for a new trial and for judgment *non obstante vere-
dicto* having been denied, judgment was entered upon the
verdict, and this appeal has been taken.

It appears from undisputed evidence that Fred J. John-
ston had been in charge of this particular edger, and had
operated it as an employee of appellant, for a period of

more than three years immediately preceding his death; that at the time of the accident he was pushing two pieces of lumber, each two by twelve inches in size, between the front rollers, to be cut by the saws into two-by-sixes. One of these pieces of lumber was placed immediately on top of the other, making a total thickness of four inches, thus requiring the front rollers to be that distance apart. There were two pairs of rollers, one pair in front, and the other in the rear of the saws, the two sets being about twenty to twenty-four inches apart. There were several saws in the edger, each about twenty inches in diameter, and extending about seven and one-half to eight inches above the arbor. The rollers were operated and adjusted by levers located at the front end of the machine where the edgerman stood. Each roller was about forty inches in length and six inches in diameter.

When the rollers were receiving lumber, the space between them not occupied by the lumber was open and unprotected. Respondents do not claim this space should have been guarded. In fact, it is conceded it could not be guarded, and no claim of negligence is based upon the absence of any guard there. Appellant had provided two guards to protect the edgerman from flying sawdust and splinters, one in a horizontal position immediately over the saws and about nine inches above the surface of the edger, and no claim is made that it was not a proper and sufficient guard. As the rollers, however, could be adjusted from a close contact with each other to a distance of about seven inches apart, there was an open space of variable width in front of the saws above the front rollers, and below the stationary or horizontal guard, requiring some proper guard to prevent dust and splinters from coming over the rollers and striking the edgerman. To provide such protection, appellant had adjusted a wooden curtain or guard, about one and one-half inches thick, twenty inches wide, and forty inches long, which was suspended by hinges from an iron bar above the rollers, hanging in a slanting position in front of the open space above the rollers, resting upon the

rollers, and so adjusted as to be swung upon the hinges. This
curtain weighed from thirty to fifty pounds. During all the
years the deceased had operated this edger, it had been pro-
vided with a guard of this character. He never complained
of it, nor did he ever claim the edger was not a suitable ma-
chine or not in good repair.

Respondents contend the curtain was not a proper or suf-
ficient guard; that it did not comply with the requirements
of the factory act of 1903; that appellant was negligent in
not providing a better and safer guard, and that the splinter
which caused Mr. Johnston's death struck said guard, caused
the same to rise by swinging on its hinges, and came out of
the edger above the rollers, which with a proper guard could
not have occurred; while appellant contends that the splinter
came through the open space between the rollers. No wit-
ness, either on behalf of appellant or respondents, testified
to an utter absence of any guard, or gave any evidence tend-
ing to show an absolute failure on the part of appellant to
provide any guard whatever. Some two or three witnesses on
behalf of respondents gave testimony tending to show that, in
their opinion, the curtain was not the best or safest guard
that could have been provided; but they are quite indefinite
and indistinct in explaining what would have been a proper
guard. On the other hand, a number of experienced mill
men, as witnesses for appellant, testified that the curtain was
not only a proper and suitable safeguard, but that it was the
best protection that could be designed.

Many assignments of error are discussed in the briefs, yet
the two controlling questions here are: (1) Does a failure or
refusal to comply with the factory act of 1903 deprive appel-
lant of the common law defense of assumption of risk? (2)
if so, does the factory act render the master an insurer of his
servant, or has he complied with the statute when he has
furnished guards which are a sufficient protection against all
dangers which an ordinarily prudent person could anticipate?
The first of these questions has been answered in the affirma-

tive by the cases of *Hall v. West & Slade Mill Co.*, 39 Wash. 447, 81 Pac. 915; *Whelan v. Washington Lum. Co.*, 41 Wash. 153, 83 Pac. 98; *Hoveland v. Hall Bros. Marine R. etc. Co.*, 41 Wash. 164, 82 Pac. 1090; and *Erickson v. McNeeley & Co.*, 41 Wash. 509, 84 Pac. 3.

The evidence shows that appellant had made an honest, careful, and *bona fide* effort to safeguard the edger, and that in doing so it had exercised due caution and its very best judgment. It is conceded that this accident was a most unusual and unexpected one, such as none of the witnesses save one had ever seen or heard of, and that one witness testified that the accident within his knowledge had occurred in an eastern state on a different make of machine, provided with a different guard and under circumstance, not similar to those of this case. The decedent had worked at the machine with the same guard in apparent safety for more than three years. He took care of his own machine, and knew as much about the safeguards as did appellant. In the *Hall* case, and other recent cases above cited, there was no attempt to maintain a proper guard, or any guard at all. Here the facts are different, as a guard approved by experienced mill men was maintained. In *Daffron v. Majestic Laundry Co.*, 41 Wash. 65, 82 Pac. 1089, this court said:

"Respondent contends that it was not a 'proper' guard, for the reason that it did not prevent the injury while some other kind of a guard would have done so. It was not shown that any particular kind of guard was recognized or accepted generally as being essential to meet the requirements of the statute. But it was shown by respondent's witnesses that there are several different kinds of guards in use. No particular kind is required by the statute or any recognized custom or authority. This being true, what would be the duty of a laundry owner in the premises? How could he tell what would be regarded as a 'proper' guard, within the meaning of this statute? He has no standard to go by. He could only rely upon his own experience, observation, and judgment. Before appellant can be deprived of the defense of assumed risk, it must affirmatively appear that it violated this fac-

tory act in not having a proper guard. It is only required to provide guards sufficient to protect against such dangers as reasonably intelligent and experienced laundrymen would anticipate."

So here, appellant was only required to provide guards sufficient to protect against such dangers as reasonably intelligent and experienced mill men would anticipate. Witnesses for both appellant and respondents concede this accident to have been most unusual, and one that could not have been reasonably expected or anticipated. In *Daffron v. Majestic Laundry Co., supra,* this court further said:

"The law is well settled that, where an employer places a guard sufficient to protect against all dangers reasonably to be anticipated, he is not guilty of negligence because the guard fails to protect against an unforseen danger against which it was not intended as a protection. *Decker v. Stimson Mill Co.,* 31 Wash. 522, 72 Pac. 98."

The evidence shows that the decedent, an experienced man, had worked at the edger for more than three years, and it is not contended by respondents that the defense of assumption of risk could be denied to appellant except for the factory act of 1903, a penal statute. Assume that appellant's manager or president had been arrested in a criminal action, and charged with a violation of this statute, would it be contended for one moment under the facts here shown, that any jury would find him guilty, or that any court would permit a verdict of guilty to stand, he having made a *bona fide,* judicious, and careful effort to comply with the statute? If so, he would be convicted simply because, after the guard had proven sufficient for many years, an unexpected and unusual accident, not anticipated by practical and experienced mill men, had occurred. Such a judgment of conviction could not be permitted to stand. Yet it will be conceded that appellant can be deprived of the defense of assumption of risk, if at all, only because of the existence of this penal statute. Although the doctrine announced in the *Hall* case is the law

of this state, it would be going too far to so extend it as to cut off the defense of assumption of risk when there has been an intelligent, careful, judicious, and honest effort on the part of the master to comply with the requirements of the factory act. Where such an effort has been prudently made by the master, and an experienced, skillful servant has ample opportunity for seeing, knowing and learning whether a guard is proper, and with such opportunities continues his work, he should be held to have assumed the risk of his employment, including the sufficiency of such guard. To hold otherwise would be to announce not only the doctrine that the master must provide the servant with a reasonably safe place to work, but also that he must under all circumstances be an insurer of the life and safety of his servant. Appellant, having in good faith endeavored to comply with the requirements of the factory act in a careful and judicious manner, is entitled to interpose the defense of assumption of risk.

The judgment is reversed, and the cause remanded with instructions to dismiss the action.

Mount, C. J., Rudkin, Fullerton, Hadley, and Dunbar, JJ., concur.

Root, J., having been of counsel, took no part.