[No. 7938.   Department Two.   November 16, 1909.]

ARCHIE BENNER, *Respondent*, v. WALLACE LUMBER &
MANUFACTURING COMPANY, *Appellant*.[1]

MASTER AND SERVANT—NEGLIGENCE OF MASTER—DEFECTIVE APPLI-
ANCE—GUARDS—FACTORY ACT.  A master is not relieved from the duty
of properly safeguarding saws and so "maintaining" them, as re-
quired by the factory act, by the fact that various servants, from time
to time, removed the safeguards supplied, to suit their own conven-
ience, where the injured servant did not do so, and was ordered to
work upon an unguarded saw.

SAME—ASSUMPTION OF RISKS.  Assumption of risks is not a de-
fense to an action for personal injuries sustained by reason of the
master's failure to guard a saw as required by the factory act.

MASTER AND SERVANT — APPLIANCES — GUARDING MACHINERY—FAC-
TORY ACT—PRIMA FACIE CASE—INSTRUCTIONS—HARMLESS ERROR.  In
an action for personal injuries sustained by a knot-sawyer while at
work upon an unguarded saw, it is not prejudicial error to refuse to
give defendant's requested instruction that the posted certificate of
inspection of the labor commissioner was *prima facie* evidence of
compliance with the factory act requiring the guarding of saws
(made so by statute), where there was much evidence that the saw
in question was not guarded and the defendant had introduced evi-
dence, including that of the inspector himself, to show that it was
properly guarded; the *prima facie* case thereby becoming immaterial.

Appeal from a judgment of the superior court for Sno-
homish county, Neterer, J., entered June 29, 1908, upon the
verdict of a jury rendered in favor of the plaintiff, in an
action for personal injuries sustained by an employee in a
shingle mill.   Affirmed.

*Roberts & Hulbert*, for appellant.

*Lyter & Folsom* and *S. G. Murray*, for respondent.

CROW, J.—This action was originally commenced by
Archie Benner, an infant, by Mary Benner, his guardian
*ad litem*, against the Wallace Lumber & Manufacturing Com-
pany, a corporation, to recover damages for personal in-

[1]Reported in 105 Pac. 145.

juries sustained. Prior to the trial the plaintiff attained his majority, and now prosecutes the action. From a judgment in his favor the defendant has appealed.

The appellant owns and operates a shingle mill in Snohomish county, in which the respondent, a young man about twenty years of age, was employed as a shingle packer. The mill was equipped with three knot saws, and occasionally the appellant directed the respondent to operate one of them. He had worked on the saw at different times, to the total amount of seventeen and one-half days. The saw was adjusted on an arbor immediately in front of, and about eighteen inches from, the sawyer. Slightly above the saw was a shelf or table, on which were the shingles which were to be trimmed by the sawyer. The edge of the table, when properly constructed, so extended over the saw as to leave only a small portion thereof exposed, thus serving as a safeguard for the protection of the sawyer. Immediately in front of the sawyer, and slightly below the level of the table, was a sliding carriage upon which he placed the shingles he intended to trim. He then pushed the carriage under the table, carrying the shingles against the saw and trimming them. The sawyer was compelled to reach over the table for the shingles, and in doing so passed his hand above the level of the saw.

On the morning of the accident, appellant's foreman directed him to operate the knot saw. About three o'clock in the afternoon, as respondent withdrew his hand after reaching over the table for shingles, it in some manner came in contact with the saw, and was severely injured. In his complaint and on the trial, he contended that the appellant was guilty of negligence in failing properly to safeguard the saw, and that he was injured by reason thereof.

The first, and as we regard it, the controlling contention made by the appellant, is that the trial court erred in denying its motion for a directed verdict. It contends that the saw had been properly guarded, but that the guard had been

removed and replaced from time to time by appellant's employees, certain other knot sawyers, for their own convenience in performing their work. There was evidence tending to show that, when the saw was first installed and the table was first constructed, some years prior to the accident, the edge of the table had been sufficiently extended to constitute a practical safeguard. It was further shown that, from time to time, the knot sawyers would chop out or saw off the edge of the table, leaving greater portions of the saw exposed; that other knot sawyers, before commencing work, would nail on a band or cleat to again extend it and more securely guard the saw, and that the various sawyers, from time to time, made these changes according to their own ideas.

Appellant therefore contends that, when it, as the master, had properly constructed the table to serve as a guard, it had discharged its full duty, and that if the sawyers thereafter removed, changed, or added to the guard, the appellant was not guilty of negligence in failing to install or maintain the same. This contention cannot be sustained. Whenever a master employs a servant, or changes the character of his work, it is the master's duty, at the inception of and during such employment, to furnish the servant a reasonably safe place in which to work, and to also comply with the requirements of the factory act in properly safeguarding saws and other dangerous machinery, where guards are practical. Whether an employee has wilfully changed, removed, or destroyed a proper safeguard, provided by the master, might become a material issue if such servant, being injured, should attempt to recover damages. But no such issue is now before us. There is ample evidence in the record to show that, when the appellant directed the respondent to commence work on the saw, it was not then properly guarded, a fact the master should have known, and that by reason of the absence of a proper guard, the respondent was injured. A reckless or negligent servant might wilfully remove a proper guard that had been provided by the master. An-

other servant more cautious and conservative might himself voluntarily perform the duty of the master by restoring the guard before commencing his work. The respondent did neither. He was under no obligation to provide or change the guard. He commenced work upon the saw in obedience to the order of the master, and the only question to be determined is whether it could be, and was then, guarded as required by the factory act. As above stated, the appellant introduced considerable evidence to show that it was the custom of knot sawyers to repeatedly change, remove, or add to the guard, to suit their own convenience, and in substance contended that, when it had once properly safeguarded the saw, it had discharged its duty, and that the custom of the employees constituted a sufficient excuse to relieve it of any charge of negligence resulting from its subsequent failure to restore the guard. The statute not only requires that guards be provided, but also that they be *maintained* in use. Laws 1907, p. 448, ch. 205, § 1.

The appellant cites *Johnston v. Northern Lumber Co.,* 42 Wash. 230, 84 Pac. 627, and *Daffron v. Majestic Laundry Co.,* 41 Wash. 65, 82 Pac. 1089, and contends, on the authority of those cases, that it is relieved from liability for negligence by reason of the fact that it had properly safeguarded the saw. There is a marked difference between the facts of the case at bar and those of the cases cited. In the *Johnston* case the guard had not been changed or removed. It had been in use for a number of years. It had not only been properly installed, but had been also maintained. The servant had been working at the machine with the same guard during all of that time. The contention there made was that some guard other than the one actually used should have been adopted. In the *Daffron* case it appeared that a proper guard had been provided. Here the fact seems to be that no practical or proper guard whatever was provided for the knot saw, at the particular time the respondent went to work, or during the time he continued at work. If the appellant.

could excuse its neglect by relying upon the action of the knot sawyers in changing or removing the guards, such a defense would be equivalent to withdrawing from the jury the vital issue whether the saw was properly guarded when used by the respondent, and substituting in lieu thereof an immaterial inquiry into the custom of knot sawyers who had preceded respondent in operating the saw. The statute does not contemplate or permit any such defense or excuse. There was abundant evidence to sustain the jury in finding that a practical guard could be provided, that it was not provided at the time the respondent commenced work, and that as a result thereof he was injured. The motion for a directed verdict was properly denied.

The trial court instructed the jury on the defense of assumption of risk pleaded by the appellant. After the jury had retired, the respondent promptly interposed an exception to the giving of this instruction. Thereupon the jury were recalled, and the trial judge withdrew the defense from their consideration as not being an issue in the case. The appellant has assigned error upon the withdrawal of the instruction. The controlling issue of fact in this case was whether the knot saw could be and was guarded. The only ground of negligence alleged was appellant's failure to guard. If appellant had guarded there could be no recovery. If the saw could not be guarded, appellant was in no event negligent. Assumption of risk was not an issue in the case. If appellant had failed to provide proper guards when practicable, the defense could not be interposed. *Hall v. West & Slade Mill Co.*, 39 Wash. 447, 81 Pac. 915.

The mill had been inspected by the deputy labor commissioner, who issued a certificate which the appellant posted in compliance with the requirements of the statute. The certificate was admitted in evidence, and the deputy who made the inspection appeared as a witness for appellant and testified as to what he considered necessary to constitute a proper safeguard, and stated the condition in which he found the

mill.    The appellant in writing requested, with others, the following instructions No. 19:    .

"You are instructed that under the law of this state that if the operator of a mill has his mill inspected by the labor commissioner or one of his deputies and receives a certificate of inspection and posts the same in his mill, that this certificate is *prima facie* evidence that the factory act has been complied with and that the machinery and appliances have been constructed and maintained in a reasonably safe condition.    In other words, the law requires the operator of a mill to have his mill inspected by the state labor commissioner of this state and whenever this is done .and a certificate is issued to the owner of a mill and the certificates are posted in the mill the presumption is that the mill operator has complied with the law with reference to the guards and other matters and that the mill is in a proper condition and that the operator has furnished and maintained reasonable and proper safeguards; so, if you should find in this case that the defendant company had its mill inspected by the state labor commissioner or his deputy and that the commissioner had issued a certificate of inspection, copies of which certificates were posted in the mill, then I instruct you that this was *prima facie* evidence of the defendants having complied with the factory act.    It is *prima facie* evidence that the knot-saws in question in this case were reasonably and properly guarded, and I further instruct you that if the defendant in this case had complied with the factory act in regard to the furnishing of reasonable safeguards then I instruct you that the plaintiff cannot recover and your verdict must be for the defendant; you are instructed also that even if the defendant failed to comply with the factory act in furnishing a reasonable and proper safeguard, yet if the plaintiff himself was guilty of negligence he cannot recover and your verdict must be for the defendant."

This instruction was not given, nor did the trial judge give any other instruction relating to the inspection by the deputy, and the posting of his certificate.    Appellant has assigned error upon the refusal of the instruction requested. In the order denying the motion for new trial, the trial judge said:

"The defendant in support of its motion for a new trial urges two reasons:    .    .    .    2nd.  That the court refused

to give the defendant's requested instruction No. 19. The
instruction as requested should not have been given; it was
not error to refuse it. Was it error not to give an instruc-
tion covering the certificate of inspection? If the court's
attention has been actually called to the fact, or if the excep-
tion to the instruction as given had been actually taken at
the time, the court perhaps would have recalled the jury so
as to preclude all possibility of error; the question now is,
was prejudicial error committed? The deputy labor commis-
sioner was present in court and testified fully as to the facts
upon which his conclusion was based in issuing this certificate
of inspection. The reason for the rule to make the certificate
*prima facie* evidence was overcome by his testimony in court.
The certificate could not be stronger than the testimony upon
which it was based; and this was before the jury, and must
be weighed as other evidence. If the testimony was absent,
and the certificate was present, a different condition would
exist. The certificate would not be admissible in evidence,
unless made so by the legislature, because the examination
was *ex parte*, and the defendant would be deprived of the
facts before the jury upon which the certificate is based. The
instructions given preclude all possibility of error. The bur-
den in the case at no time shifted; it at all times remained
with the plaintiff. It was incumbent upon the plaintiff to
show by a fair preponderance of the evidence that the ma-
chinery was not guarded, and that it could be guarded, and
all the facts being before the jury, and the court having in-
structed the jury, as in this case, it is inconceivable how error
could be predicated upon the record as it stands in this case,
conceding that the requested instruction was proper. The
motion for a new trial is denied, and exception noted."

Some question arises in our minds as to whether the ap-
pellant is in a position to predicate error upon any of the
instructions given or refused. The record shows that no ex-
ceptions were taken by it until after the jury had returned
its verdict; that by stipulation the parties agreed that its
exceptions might be taken at any time prior to the hearing
of the motion for a new trial, and that written exceptions
were subsequently made by the appellant. In view of the
fact that the respondent has raised no question as to the
sufficiency of these exceptions, and that in any event we find

no prejudicial error in giving or refusing instructions, we will, without deciding, assume for the purposes of this case that the appellant's exceptions were, under the circumstances, sufficient.

On the record before us, we are constrained to hold that no prejudicial error was committed by the trial judge in failing to give the requested instruction upon the effect of the certificate as evidence. If no evidence other than the certificate had been introduced to show the safeguarding of the saw or to dispute the same, it would upon proper request have been the duty of the trial judge to instruct the jury that such certificate was *prima facie* evidence of compliance on the part of appellant with the requirements of the factory act. During the trial much evidence was introduced by the respondent to show that as a matter of fact the saw was not properly safeguarded, while the appellant introduced evidence not only of other witnesses but also of the inspector himself to show that it was safeguarded. This being true, no issue as to the existence of a *prima facie* case was before the jury for its consideration. Although it would have been proper for the trial judge to give an instruction upon this subject, we fail to see how his omission to do so constituted prejudicial error or could have affected the verdict, in the light of the issues framed by the pleadings and the evidence introduced at the trial. The issuance and posting of the certificate was not disputed, and it is not at all improbable that the jury would give more consideration to the potency of the certificate as evidence of a performance of statutory duty by the appellant than if they had been told that it constituted *prima facie* evidence only.

Other exceptions have been taken to instructions given and refused. We have carefully examined the instructions given by the trial judge, and find that they fully, clearly and correctly state all questions of law applicable to the issues in this case which, under the pleadings and evidence, were proper for the consideration of the jury. The evidence is abun-

dantly sufficient to show that the knot saw could have been, but was not, safeguarded, that for the want of any guard the respondent was injured, and that he was not guilty of contributory negligence.

The judgment is affirmed.

RUDKIN, C. J., MOUNT, PARKER, and DUNBAR, JJ., concur.