[No. 9024. Department Two. October 31, 1910.]

CHARLES H. ANDERSON, *Respondent*, v. PACIFIC NATIONAL LUMBER COMPANY, *Appellant*.[1]

MASTER AND SERVANT—ASSUMPTION OF RISKS—VIOLATION OF FACTORY ACT. The defense of assumption of risks is not available to a master who has failed to comply with the statute requiring the guarding of machinery.

TRIAL—PROVINCE OF COURT—NONSUIT—CONTRIBUTORY NEGLIGENCE. An action for personal injuries cannot be taken from the jury on the ground of plaintiff's contributory negligence, unless the same appears so plainly that reasonable minds cannot differ as to the natural consequences of the acts proven.

MASTER AND SERVANT — CONTRIBUTORY NEGLIGENCE — DANGEROUS ACTS—EVIDENCE—SUFFICIENCY. An oiler is not guilty of contributory negligence, as a matter of law, in attempting to turn up a grease cup on a shaft, in a narrow space dangerously near an unguarded saw, where he was acting as instructed, in the usual and ordinary method, which from the construction of the mill was the only way in which the shaft could be oiled, and the cup had been operated in that way almost hourly for two or three months without accident.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered March 10, 1910, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by an oiler in a sawmill. Affirmed.

*John P. Hartman* and *Hayden & Langhorne*, for appellant.

*Govnor Teats, Hugo Metzler*, and *Leo Teats*, for respondent.

[1]Reported in 111 Pac. 337.

DUNBAR, J.—The respondent brought suit against the appellant to recover damages for injuries alleged to have been sustained by him while working in defendant's mill as an oiler. The complaint alleges negligence on the part of the appellant by reason of its failure to guard a jump saw. Respondent had worked at appellant's mill as oiler a little over three days prior to the happening of the accident in question. Under the main floor of the mill and near the ceiling, was a line of shafting suspended from a beam in the ceiling by shaft hangers. On the lower end of the shaft hanger were grease cups, each with a diameter of two inches. By turning or tightening the cap on the cup, the grease is forced upward through a small hole and onto the shaft, which keeps the shaft oiled. The particular grease cup the top of which the respondent was attempting to turn at the time of the accident was on the lower end of a hanger which supported a rapidly revolving pulley, the outer edges of the grease cup being about one inch from the rim of this pulley. On the other side of the cup, and about three inches from the edge thereof, were the teeth of a circular steam jump saw, which when in operation made twelve hundred revolutions a minute. The jump saw was unguarded at the time the respondent met with the injury for which he brings action. The saw had been guarded, but the guard had been displaced some time before, the appellant, in the statement of the case, says two or three days previous to the accident; but the testimony of the respondent was to the effect that it was between two and three months, and the testimony offered by the appellant on this question was not at all positive, and did not purport to be. The respondent, while turning the cap of this grease cup, had his hand caught in the revolving saw, and received the injury of which he complains.

In order to reach this grease cup, the respondent stood on a beam about twelve inches wide, which was part of the framework supporting the mechanism of the steam jump saw. The respondent is a man of short stature, being five feet four or

five inches in height. It is six feet three inches from the lower part of the grease cup to the surface of the beam opposite the one that respondent stood upon when he attempted to tighten the grease cup in question. From the beam on which plaintiff stood, standing in an upright position, it is something over twenty-two inches, measuring directly across to the rim of the grease cup. According to the testimony of the respondent, he had to stand on his tip toes, hold onto the spike in the framework above him, which was placed there for that purpose, lean across the space indicated above, and tighten with the fingers of the left hand the cap on the grease cup. His theory of the accident was that, in attempting to turn the cap, his hand must have touched the pulley and been thrown into the saw. Upon the close of respondent's testimony, motion was made for nonsuit, which was overruled. At the close of all the evidence, motion was made for a directed verdict, upon the ground that respondent, under all the evidence, was clearly guilty of contributory negligence, which motion was also overruled, the case submitted to the jury, verdict returned in the sum of $2,500, judgment was entered, and appeal followed.

It is conceded by the appellant that the company stands convicted of not having the saw in question guarded when it might have been guarded. But the contention is that the respondent, in undertaking to turn this grease cap, under the circumstances as shown by his own testimony, was guilty of contributory negligence as a matter of law; that the situation was so palpably dangerous that it was venturesome and foolhardy to attempt the turning of this oil cap within the short space given between the roller and the saw. Under the rule announced in *Hall v. West & Slade Mill Co.*, 39 Wash. 447, 81 Pac. 915, the respondent did not assume the risk. The object of the factory act was to place the assumption of risk on the manufacturer who did not comply with the requirements of the act. The only question for determination here is, was the respondent, in the exercise of his duties,

27—60 WASH.

guilty of such acts as would justify the court in deciding
that he was guilty of contributory negligence as a matter of
law, leaving nothing for the determination of the jury. The
rule was laid down many years ago by Mr. Cooley to the
effect that, before an appellate court would be justified in
taking a question of this kind from the jury, contributory
negligence must appear so plainly that reasonable minds
could not differ as to the natural effect or consequences of the
acts proven; and this court has indorsed this rule and cited it
with approval in many cases.

Applying this test to the testimony in this case, can it be
said that the respondent was guilty of contributory negli-
gence as a matter of law? We think not. The testimony
shows that the saw was not guarded where it should have been
guarded, and that the guard had been off between two and
three months when the respondent was placed at the work
of oiling. The respondent's testimony was to the effect that
Mr. Nailor, the foreman, called Mr. Fresh, an experienced
oiler, introduced respondent to him, and told Fresh in re-
spondent's presence to show him around and instruct him as
to his duties. Mr. Fresh did take him around the mill, and
explained to him where and how to oil the machinery. Mr.
Fresh also testifies to the same effect, that he showed this
particular oiling place to the respondent, that he stood on the
twelve-inch timber, with his right hand catching onto the
timber above, reached forward with his left hand, and demon-
strated to the respondent how the cap should be moved, in-
structing him to be careful in the exercise of the work, and
also that he must move this cap very frequently in order to
keep the shaft from becoming dry. It also appeared from
the testimony of Mr. Fresh that this was the only way in
which this shaft could be oiled.

It must be remembered that the oil was not placed in this
cup from this particular point, but that the turning of the
cap threw the oil up onto the shaft. So it would seem that a
man's whole hand would not necessarily be occupied in the

turning of this cap.    It could be done evidently by catching
the cap between the points of his thumb and fingers; and
while the testimony showed that it was a more or less dan-
gerous duty to perform, and that without exercising care the
operator's hand was liable to be thrown onto the saw, it also
showed that it was the usual and ordinary method of turning
the cap; that it had evidently not been regarded by the owners
of the mill as so essentially dangerous that it was not prac-
ticable to operate it in that way, or they would not have so
constructed it, leaving no other way for the greasing of the
shaft.    It appears also that it had been operated in that way
by different persons for two or three months, almost hourly,
without accident occurring to the operator.    Inasmuch as
the owners and designers of the machinery had evidently not
regarded it as necessarily dangerous when due caution was
taken in operating it, and that they had hired this man to
operate it knowing its structural condition, it could scarcely·
be said, we think, with justice, that reasonable minds did not
differ on the subject of whether its operation was a mani-
festation of contributory negligence as a matter of law.    It
would be a hard rule to permit manufacturers to construct
machines so that they had to be operated in a particular way,
hire men to operate them, instruct them in the mode of operat-
ing them, thereby to a certain extent at least recommend-
ing their safety when operated with care, and then hold that
the very fact that the employee undertook to operate the·
machinery as directed and in the only way that it could be·
operated, was conclusive proof of contributory negligence on
the part of the employee.    We think the court committed no
error in refusing the motions for nonsuit and for a directed
verdict.

It is also assigned that the court erred in denying the mo-
tion for a new trial on the ground that the verdict returned
by the jury was excessive.    But a reading of the record
satisfies us that we would not be justified in interfering with

the judgment rendered.   The judgment will therefore be affirmed.

RUDKIN, C. J., CHADWICK, CROW, and MORRIS, JJ., concur.