[No. 8960.    Department One.    January 6, 1911.]

OTTO LEPPER, *Respondent*, v. STETSON & POST LUMBER
COMPANY, *Appellant*.[1]

MASTER AND SERVANT—APPLIANCES—GUARDS—FACTORY ACT—EVI-
DENCE—SUFFICIENCY.   Whether it was practicable for the rollers in
front of an edger in a sawmill to have been guarded under the
factory act is for the jury where it appears that they might· have
been effectively guarded by a stationary rod across the front of the
edger and a dead roller in front of the live roller.

SAME·— CONTRIBUTORY   NEGLIGENCE — EVIDENCE — SUFFICIENCY.
Whether an operator of an edger was guilty of contributory neg-
ligence in oiling the machine while the rollers were in motion, is
for the jury, where it appears that he was instructed to do so, that
was the customary practice, oiling had to be done frequently, and
to stop the rollers would have caused delay.

Appeal from a judgment of the superior court for King
county, Shackleford, J., entered January 28, 1910, upon the
verdict of a jury rendered in favor of the plaintiff, in an action
for personal injuries sustained by the operator of an edger
machine in a sawmill.   Affirmed.

*John P. Hartman*, for appellant.

*Caldwell & Riddell*, for respondent.

PARKER, J.—This is an action to recover damages for per-
sonal injuries, alleged to have resulted to the plaintiff from
the negligence of the defendant in not having certain live
rollers upon an edger machine in its sawmill properly guarded
as required by the factory act.   A trial before the court and
a jury resulted in a verdict and judgment in favor of plaintiff,
from which the defendant has appealed.

The contentions of learned counsel for appellant upon this
appeal involve little else than questions of fact.   They arise
upon the· challenge to the sufficiency of the evidence made by
appellant's motion for a nonsuit, by its motion for a directed
verdict, and by its motion for judgment notwithstanding the

[1]Reported in 112 Pac. 514.

verdict; all of which were denied by the trial court. The evidence is in conflict upon some of the material facts, but a careful review of it convinces us that there was competent evidence submitted to the jury warranting the conclusion that the following facts were established thereby.

The appellant operates a sawmill at Seattle. The respondent had been employed by appellant for some time prior to the time of his injury, as an operator of an edger machine, in the mill of appellant. He was then twenty-eight years old, and was experienced in work of that nature. The machine was the one through which the lumber passed next after leaving the head saw, where it was first sawed from the logs into pieces called cants, varying in thickness from one to six inches. These were then passed through the edger, reducing the lumber to smaller dimensions. This was the work of respondent. There were several circular saws in the edger revolving upon a common shaft, attached thereto in such manner that they could be shifted by certain levers and adjusted at varying distances apart, as might be necessary to produce the varying dimensions of lumber required to be cut from the cants coming from the head saw. In front of the saws, a few inches from their edges, and running parallel with the shaft upon which they revolved were the rollers, one above the other, which it is claimed by respondent were not properly guarded. These rollers were about six inches in diameter, about five feet long, and extended horizontally across the front of the edger about three feet above the floor.

Respondent's working position was immediately in front of these rollers, and consisted principally in passing the cants through them to the saws, the lumber emerging on the other side of the edger reduced to the desired dimensions. It was also his duty to adjust the saws at proper distances apart, by means of levers extending from the shaft upon which the saws revolved, out under the rollers. The outer ends of these levers extended beyond the front of the edger and the rollers some twelve inches, where respondent

could readily grasp them. The saws required change of position as to their distance apart very often, because of the difference in the width of the cants coming from the head saw. These changes in the positions of the saws became necessary on an average upon the arrival of every other cant from the head saw. These levers rested by bearings upon a rod extending horizontally some six inches from their outer ends. It was necessary that the rod and these bearings be oiled about ten times each day. This was also respondent's duty. Almost immediately above this rod and these bearings there was the dial plate, with figures on it by which the saws could be adjusted at proper distances apart. This plate was parallel with and about four inches from the lower roller, and was about on a level with the lowest part of the lower roller. The lower roller was stationary, except that it revolved, while the upper one could be raised from the lower one as much as six inches. This was accomplished by a lever, worked by a rod running horizontally clear across the front of the edger, parallel with and a few inches higher than the top of the upper roller, and about ten inches out from it. The pulling of this rod away from the front of the edger raised the upper roller, while the pushing of the rod towards the edger let the upper roller down upon the lower one, or whatever object was between them, causing the object to be tightly grasped and drawn in upon the saws. There was nothing between respondent's working position and these rollers except the objects we have described.

It was customary to keep the oil can on top of the edger directly over the rollers, the place being a little above respondent's head while standing at his working place. Respondent was injured by having his hand caught by the rollers and drawn in upon one of the saws. He was brushing the sawdust off the rod upon which the bearings of the levers rested, preparatory to oiling the rod, and was reaching for the oil can on top of the edger when his other hand was caught and drawn into the rollers upon one of the saws.

As his hand was caught he was drawn against the rod, which
raised and lowered the upper roller in such manner that he
could not pull it from the edger, which would have released
the grip of the rollers upon his hand. This he tried, but was
unable to do. The injury caused by the roller was evidently
not near so serious as that caused by the saw. Had the grip
of the rollers been released by pushing the rod towards in-
stead of pulling it away from the edger, it is probable that
even the injury from the rollers would have been much less,
since their grip would have been released at almost the same
instant of the catching of his hand. The rod could have
been connected so as to raise the roller, by pushing instead of
pulling.

These facts, it seems to us, clearly warrant the conclusion
that these rollers were not guarded, and that respondent
in the performance of his duties was liable to come in contact
with them. As to the practicability of effectively guarding
them with due regard to their use, there was evidence tending
to show that they might have been effectively guarded by
having a stationary rod across the front of the edger at a
suitable distance from the upper roller, of course high enough
to admit a six-inch cant under such rod, and by having a
dead roller or some obstruction immediately in front of the
lower live roller. The rod for raising and lowering the upper
roller proved to be more of a trap than a guard. These con-
clusions can be reached almost from an examination of the
photographs of the edger put in evidence, without the aid
of the testimony of experienced machine men which was pro-
duced. We are of the opinion that in no event could these
questions be decided as a matter of law in favor of appellant.

It is contended by learned counsel for appellant that re-
spondent should have stopped the rollers before attempting
to oil the bearing rod under the saw levers, there being an
appliance by which this could be done by respondent without
stopping the mill. This contention has to do with the ques-
tion of contributory negligence of respondent, rather more

than the question of guards to the rollers, though counsel seem to argue that this stopping device was in effect a guard. We think, however,. that this presents only the question of whether or not respondent was guilty of contributory negligence in attempting to oil the rod while the rollers were in motion. There was competent evidence tending to show that respondent was instructed by the foreman how to oil this rod while the rollers were in motion, and that it was the custom to oil the rod without stopping the rollers. The evidence tended to show that the head saw sent the cants to the edger as fast as they could there be taken care of by rapid work of the edger operator, so that he had to watch his opportunity and act very quickly in oiling the rod. It was not impossible to stop the rollers for that short time, but it evidently would take some time. It also appears that the stopping of the rollers would also stop certain other rollers which carried pieces to the edger from another place, and it was desirable, though possibly not absolutely necessary, to keep such rollers in motion. We think that the jury were fully warranted in believing that the appellant intended that respondent should not stop the rollers while oiling the rod, and we cannot say, in the light of this record, that the acts of respondent were so apparently dangerous as to make him guilty of contributory negligence as a matter of law. This question was also for the jury. *Green v. Western American Co.*, 30 Wash. 87, 70 Pac. 310; *Hall v. West & Slade Mill Co.*, 39 Wash. 447, 81 Pac. 915; *Whelan v. Washington Lumber Co.*, 41 Wash. 153, 83 Pac. 98, 111 Am. St. 1006; *Hoveland v. Hall Bros. Marine R. etc. Co.*, 41 Wash. 164, 82 Pac. 1090; *Hansen.v. Seattle Lumber Co.*, 41 Wash. 349, 83 Pac. 102; *Erickson v. McNeeley & Co.*, 41 Wash. 509, 84 Pac. 3; *Thomson v. Issaquah Shingle Co.*, 43 Wash. 253, 86 Pac. 588; *Benner v. Wallace Lumber & Mfg. Co.*, 55 Wash. 679, 105 Pac. 145; *Anderson v. Pacific National Lumber Co.*, 60 Wash. 415, 111 Pac. 337.

Learned counsel for appellant place some reliance upon

*Daffron v. Majestic Laundry Co.*, 41 Wash. 65, 82 Pac. 1089, and *Johnston v. Northern Lumber Co.*, 42 Wash. 230, 84 Pac. 627. We think, however, that these cases can be readily distinguished from the one before us. In those cases, not only was there a *bona fide* effort to comply with the factory act, but the injuries occurred in a manner not reasonably to be anticipated. We think that, so far as the dangers of the rollers are concerned, this injury occurred in just such a manner as would be expected. Their danger consisted of the possibility of a person being caught between them. Suitable guards would have prevented a person coming in contact with them, except in a deliberate attempt to do so.

The judgment is affirmed.

RUDKIN, C. J., FULLERTON, MOUNT, and GOSE, JJ., concur.