[No. 9551.  Department One.  October 28, 1911.]

J. M. BURNS, *Respondent*, v. GEORGE W. LEUDINGHAUS, *Appellant*.[1]

MASTER AND SERVANT—INJURY TO SERVANT—ASSUMPTION OF RISKS —GUARDING MACHINERY—APPLIANCES IN GENERAL USE. A head sawyer in a mill assumes the risks, and cannot recover for injuries received by coming in contact with the rock saw, under which he walked when it had been lowered, where the master had made an honest effort to guard the saw, providing such a guard as was in general use within the factory act, Rem. & Bal. Code, § 6587, requiring the adoption of reasonable safeguards for all saws which it is practicable to guard, and the sawyer had used the same in that condition without complaint, even if it were practicable to have provided some other kind of guard that might have prevented the accident (DUNBAR, C. J., and FULLERTON, J., dissenting).

Appeal from a judgment of the superior court for Lewis county, Rice, J., entered November 9, 1910, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a sawyer in a sawmill. Reversed.

*James B. Murphy*, for appellant.

*Govnor Teats, Hugo Metzler, Leo Teats*, and *Ralph Teats*, for respondent.

MOUNT, J.—The plaintiff recovered a judgment for $2,-525 for personal injuries, upon the verdict of a jury in the court below. The defendant has appealed.

The plaintiff was head sawyer in the defendant's sawmill, where he had worked for several years, and was an experienced workman. He was injured by bumping his head into an overhead saw which was known as a rock saw. This saw was from eighteen to twenty inches in diameter, three-fourths of an inch in thickness, and revolved at the rate of 1,500 to 1,600 revolutions per minute. It was fixed in a frame in

[1]Reported in 118 Pac. 305.

front of and near the main saw. This frame was about ten feet long and was hung on a spindle at the end opposite the saw. It was balanced by a weight on an arm extending back from the spindle or axis, so that when not in use the frame rested parallel with the floor of the mill about eight feet above it. When it was desired to use this rock saw, the deck men, by means of a rope, would pull the saw down into position for use. The office of this rock saw was to cut a channel ahead of the main saw through the bark of logs being sawed, and thus remove rocks, grit, and other substances which would tend to dull the teeth of the main saw. The rail of the log carriage track which was nearest the rock saw was about six inches away from the perpendicular path which the rock saw made in descending. The sawyer's position when operating the saw was facing the log carriage, a short distance away from the carriage and near the main saw. An opening known as a conveyor hole, which permitted sawdust to fall through·the floor and be carried away, was located almost perpendicularly beneath the rock saw, and was between the sawyer and the carriage track. The plaintiff's duties as head sawyer were to operate the saws and the log carriage, and to give the setter orders preparatory to making a cut in a log. He also directed the deck man when he wanted the rock saw pulled down into position. The deck man, however, would sometimes do this without a special order from the sawyer. It was also the plaintiff's duty to see that the men about the mill did their work and kept the mill running.

At the time of the accident, the log carriage had received a new log. A heavy cant had been thrown on the live rolls by the former trip of the carriage. Plaintiff noticed that the cant had lodged, and that the tail sawyer was unable to remove it. Plaintiff thereupon went to assist the tail sawyer. In going he stepped in front of the log carriage, across the conveyor opening, and under the rock saw, which at that time hung in its place. After removing the cant, plaintiff started back

15—65 WASH.

to his post.   He did not notice that the deck man had pulled the rock saw down a short distance.   He was looking at the conveyor hole.   He stepped upon the rail of the carriage way.   In taking the next step across the conveyor hole, his head came in contact with the teeth of the rock saw, which cut away a part of the bone covering the brain.   He was rendered unconscious.

This action is based upon the allegation that the rock saw was not effectively guarded as required by the factory act. The proof showed that a wooden box was placed over the top of the saw and down about three inches below the arbor or axis on the one side, and down to the arbor on the opposite side, and then rubber belting on each side and ends of the box came down even with the bottom of the saw when it was installed.   Some sacks were also placed behind the saw.   It was claimed by · counsel for the plaintiff that the box was no guard, and would in no way protect men who were working beneath the saw; that there are several practical guards in general use which are made of metal; that the metal entirely covers the saw upon both sides, and is made so as to rest upon the log while the saw passes down into the log; that the metal guard is so heavy that, if a man should bump against it, the weight of the guard would knock him away from the saw before the saw could strike him.   At the close of all the evidence, the defendant moved the court to direct a verdict against plaintiff, upon the ground that no negligence of the defendant was shown, and that there was no proof that the defendant had failed to comply with the factory act; also upon other grounds.   This motion was denied, and the defendant relies upon that point here.

We are satisfied that it was the duty of the trial court to sustain this motion.   It may be true that a different kind of a guard would have prevented this particular accident, and the proof shows that there were several different kinds of guards used by different mills upon this kind of a saw; and one or two of the plaintiff's witnesses testified that the cover

upon the top of the saw was no guard. But it is apparent that they did not mean that there had been no honest intent to guard the saw, for they also stated that the covering prevented the saw from throwing bark and rocks about the mill and prevented danger from that source, which was the obvious purpose of the guard, and it was shown, without dispute, to be effective for that purpose. It is not quite clear how a guard may be installed upon the cutting edge of a circular saw so that it may cut wood and not cut flesh. But assuming that this may be done, we have held in several cases that, where the master has made an honest effort to comply with the factory act and has furnished such guards as would protect against dangers such as a reasonable man would anticipate, he has performed his duty under the factory act. *Daffron v. Majestic Laundry Co.*, 41 Wash. 65, 82 Pac. 1089; *Johnston v. Northern Lumber Co.*, 42 Wash. 230, 84 Pac. 627; *Vosberg v. Michigan Lumber Co.*, 45 Wash. 670, 89 Pac. 168; *Benner v. Wallace Lumber & Mfg. Co.*, 55 Wash. 679, 105 Pac. 145.

In *Johnston v. Northern Lumber Co.*, we said:

"Where such an effort has been prudently made by the master, and an experienced, skillful servant has ample opportunity for seeing, knowing and learning whether a guard is proper, and with such opportunities continues his work, he should be held to have assumed the risk of his employment, including the sufficiency of such guard. To hold otherwise would be to announce not only the doctrine that the master must provide the servant with a reasonably safe place to work, but also that he must, under all circumstances, be an insurer of the life and safety of his servant. Appellant, having in good faith endeavored to comply with the requirements of the factory act in a careful and judicious manner, is entitled to interpose the defense of assumption of risk."

The statute provides:

"Any person, firm, corporation or association operating a . . . mill . . . where machinery is used, shall provide and maintain in use, . . . reasonable safeguards for all . . . saws, . . . which it is practicable to guard, and which can

be effectually guarded with due regard to the ordinary use of such machinery and appliances, and the dangers to employees therefrom, and with which the employees of any such . . . mill . . . are liable to come in contact while in the performance of their duties; . . ." Rem. & Bal. Code, § 6587.

This statute does not provide for absolute protection. Reasonable safeguards for saws which it is practicable to guard and which can be effectively guarded are all that is required. In this case such a guard was unquestionably furnished. It was one similar to guards in general use upon such saws, and there is some evidence to show it was superior to guards in general use. It had been used for many years, and the plaintiff had worked about it, using the saw, and had seen the guard during all of those years. He was an experienced man, and must have known its office and efficiency, and there is no evidence that he ever made any objection to it. Under these facts there was no violation of statutory duty.

No other negligence of the defendant was alleged or claimed. The duty of the court, upon these facts, was clearly to direct a verdict, and not to permit the jury to say that some other guard might have been better and would have prevented this particular accident, for the statute does not require such guards.

The judgment is therefore reversed, and the cause ordered dismissed.

PARKER and GOSE, JJ., concur.

DUNBAR, C. J., and FULLERTON, J., dissent.